156 So.2d 833 (1963)
W.P. TYSON et al., Petitioners,
v.
Wade H. LANIER, Jr., Osceola County Tax Assessor, et al., Respondents.
No. 32080.
Supreme Court of Florida.
June 5, 1963.
On Rehearing October 9, 1963.
*834 Daniel J. LeFevre, Warrick, Cargill & LeFevre, Winter Park, Warren E. Hall, Jr., Chesterfield H. Smith, Helen C. Ellis and Holland, Bevis & Smith, Bartow, for petitioners.
Murray W. Overstreet, Jr., and Russell S. Thacker, of Thacker & Thacker, Kissimmee, for appellees.
Paul & Sams, Miami, M.W. Wells, R.F. Maguire, Jr., of Maguire, Voorhis & Wells, Orlando, Doyle E. Carlton, of Mabry, Reaves, Carlton, Fields & Ward and Counts Johnson, Tampa, amici curiae.
TERRELL, Justice.
October 7, 1960, petitioners filed complaint in the Circuit Court of Osceola County, Ninth Judicial Circuit, alleging that their lands were not legally assessed for the year 1960 and praying that the court issue a mandatory injunction directed to respondents requiring them to reassess said lands as required by § 193.11(3), Florida Statutes, F.S.A. Certain taxpayers were permitted to intervene; there was an answer to the complaint in which the material allegations thereof were denied. At final hearing, after evidence taken, the chancellor found: (1) That the taxing authorities of Osceola County had disregarded and failed to comply with the provisions of § 193.11(3), Florida Statutes, F.S.A.; (2) he enjoined the collection of complainants' taxes and required the refunding of monies paid into the registry of the court for taxes so paid. He ordered that complainants' lands be reassessed, taking into consideration § 193.11(3), Florida Statutes, F.S.A., and granted other relief.
Respondent appealed from this judgment to the District Court of Appeal, Second District, and petitioners cross-appealed. The district court of appeal reversed the chancellor in a 2-1 decision, Judge White dissenting. We are confronted with both an appeal and a petition for writ of certiorari from the decision of the district court of appeal.
Petitioners, who are also appellants, seek review by appeal on the theory that the district court of appeal initially passed upon the validity of § 193.11(3), Florida Statutes, F.S.A., and further that it initially construed Section 1, Article IX, Florida Constitution, F.S.A, so as to vitiate the clear meaning of § 193.11(3), Florida Statutes, F.S.A. Petitioners have also filed a petition for writ of certiorari in which they contend that this court has jurisdiction by virtue of the fact that the decision of the district court of appeal is in direct conflict with a decision of the Supreme Court on the same point of law and that said decision affects a class of constitutional officers, to wit, all county tax assessors.
Section 4(2), Article V, Florida Constitution, with limitations clothes this court with jurisdiction where the constitutionality of an act is brought in question. Does Section 4(2), Article V, Florida Constitution, vest us with jurisdiction of this cause? Respondents, who are appellees also, deny that any constitutional question is presented, despite the fact that a large portion of the opinion of the district court of appeal is directed to this point and in our discussion of the act as applied to the facts of this case, we have not avoided the constitutional aspect, as will be later shown.
Judge White pointed out in his dissent that the effect of the court's judgment of reversal is to strike down a legislative act that is essentially clear in its provisions and clearly within the enacting power of the legislature. The majority opinion of the district court of appeal said in effect that to adopt the interpretation of § 193.11(3) F.S.A., made by the circuit court, would render the statute of doubtful validity and probably unconstitutional as a violation of Section 1, Article IX, Florida Constitution, and the "full cash value" requirements of § 193.11(1), F.S.A., as well as an erroneous *835 interpretation of the legislative intent when it enacted § 193.11(3), Florida Statutes.
In discussing the statute [§ 193.11(3), Florida Statutes F.S.A.], the district court of appeal used the following language:
"In Florida, Article IX Section 1 [F.S.A.] of our Constitution requires a uniform and equal rate of taxation and further requires a just valuation of property. We will therefore attempt, with reference to these two requirements, to test the constitutionality of the construction given by the lower court to § 193.11(3)."
It is true that the effect of the opinion of the district court of appeal was to render the circuit court's interpretation of § 193.11(3), Florida Statutes, F.S.A., of "doubtful constitutionality." Consequently, the district court gave said statute a different interpretation so as to render it valid. From this and other reasons later pointed out, it appears to us that the validity of § 193.11(3), Florida Statutes, F.S.A., was not a mere abstract or shadowy issue but a real one before the district court of appeal. Evans v. Carroll, Fla. 1958, 104 So.2d 375.
We do not overlook the fact that the district court of appeal rather than the circuit court passed initially on the validity of the statute. See In re Kionka's Estate, Fla. 1960, 121 So.2d 644, particularly Justice O'Connell's specially concurring opinion where the question of who is the initial interpreter of an act or constitutional provision is thoroughly discussed.
In his final decree the chancellor found in terms that no constitutional question was involved. The district court of appeal found that the chancellor's interpretation of the act was of "doubtful constitutionality" and in his dissenting opinion Judge White said that "despite protests to the contrary, the majority interpretation of the act is composed squarely in constitutional perspective because there are constitutional aspects that cannot be avoided." We do not discuss these views except to say that they leave the law in a state that needs clarifying. In the main we think the interpretation of the act by the chancellor was correct and the interpretation of the district court of appeal was wrong in part but account of the confused state in which they leave the law, tax assessors over the state would not know how to perform the duties imposed on them. It does seem that if there ever were a case which requires this court to assume jurisdiction and clarify the law, this is it.
As to jurisdiction by certiorari, in Zirin v. Charles Pfizer & Co., Fla. 1961, 128 So.2d 594, we held that if this court has jurisdiction on any ground, it may dispose of the case on the merits. It may be that in view of the foregoing discussion jurisdiction on the conflict theory is difficult to determine, but on the theory that the decision affects a class of constitutional officers, that is to say, tax assessors, it is clear.
In State v. Robinson, Fla. 1961, 132 So.2d 156, we had a case similar to this in that it involved a single justice of the peace. The taxing officers of Osceola County are parties to this suit but it involves indirectly all taxing officers throughout the state. Since tax assessors are constitutional officers and it affects their duties, jurisdiction on that ground could hardly be successfully challenged. Section 6, Article VIII, Florida Constitution.
So much for the point of jurisdiction. What has been said will certainly reveal the state of law on that point and the necessity for its clarification. Hence the reason for this court to assume jurisdiction for the purpose of properly interpreting the act, § 193.11(3), Florida Statutes, F.S.A.
Petitioners and respondents have argued a number of questions to support their contentions but after all is said, we think there is only one question here and that is resolved by a correct interpretation of § 193.11(3), Florida Statutes, F.S.A. Every question stated and discussed has to do with some aspect of the interpretation of said act. This opinion will accordingly be directed *836 to the interpretation of § 193.11(3), Florida Statutes, F.S.A. As a basis for its interpretation, we use the first question propounded by petitioners which is as follows:
"The District Court of Appeal erred in holding that Section 193.11(3), Florida Statutes, is unconstitutional when construed as providing that, for purpose of valuation for tax assessment, agricultural lands are classified in a real property category separate and distinct from other types of real property."
The title to Chapter 57-195, Acts of 1957, from which § 193.11(3), Florida Statutes, F.S.A., is taken is as follows:
"An Act relating to the assessment for taxes of lands used for agricultural purposes; amending Section 193.11, Florida Statutes, by providing for assessment of such lands upon a valuation per acre as agricultural lands."
Section 193.11(3), Florida Statutes, F.S.A., is as follows:
"All lands being used for agricultural purposes shall be assessed as agricultural lands upon an acreage basis, regardless of the fact that any or all of said lands are embraced in a plat of a subdivision or other real estate development. Provided, `agricultural purposes' shall include only lands being used in a bona fide farming, pasture or grove operation by the lessee or owner, or some person in their employ. Provided shed nurseries, or nurseries under cover, shall not be termed agricultural and shall be excluded from this law. Lands which have not been used for agricultural purposes prior to the effective date of this law shall be prima facie subject to assessment on the same basis as assessed for the previous year, and any demand for a reassessment of such lands for agricultural purposes shall be subject to the severest scrutiny of the county tax assessor to the end that the lands shall be classified properly."
Section 1, Article IX, Florida Constitution, provides:
"The Legislature shall provide for a uniform and equal rate of taxation, * * * and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law for municipal, education, literary, scientific, religious or charitable purposes."
Section 193.11, Florida Statutes, F.S.A., provides:
"(1) * * * The county assessor of taxes shall assess all property at its full cash value. * * *"
We quote said constitutional and statutory provisions in full because they determine the purpose of the legislature in passing the act under review. The primary guide to statutory interpretation is to determine the purpose of the legislature. That purpose is rarely expressed clearer than it is in § 193.11(3), Florida Statutes, F.S.A.
We construe § 193.11(3), Florida Statutes, F.S.A., to be an act designed by the legislature (1) to classify all lands being used as such for agricultural purposes and to require that said lands be assessed upon an acreage basis regardless of the fact that any or all of said lands are embraced in a plat of a subdivision or other real estate development; (2) the act defines agricultural purposes to include only lands being used in a bona fide farming, pasture or grove operation by the lessee or owner, or some person in their employ; (3) the act provides that shed nurseries, or nurseries under cover, shall not be termed agricultural and shall be exempt from the law; (4) "Lands which have not been used for agricultural purposes prior to the effective date of this law shall be prima facie subject to assessment on the same basis as assessed for the previous year, and any demand for a reassessment of such lands for agricultural purposes shall be subject to the *837 severest scrutiny of the county tax assessor to the end that the lands shall be classified properly."
Careful examination of this statute reveals nothing but an effort on the part of the legislature to classify agricultural lands for tax purposes; it defines what constitutes agricultural lands, points out exceptions to them and gives taxing officers other leads to a correct assessment. We find nothing in the act inconsistent with the requirement of § 193.11, Florida Statutes, F.S.A., that all property be assessed at full cash value. Neither do we find anything in the act that runs counter to the requirement of Section 1, Article IX, Florida Constitution, which requires the legislature to "provide for a uniform and equal rate of taxation * * * and shall prescribe such regulations as shall secure a just valuation of all property."
The foregoing and other provisions of § 193.11(3), Florida Statutes, F.S.A., conclusively show that the legislature was attempting to classify lands used for agricultural purposes and to require that they be assessed on an acreage basis, regardless of where they were located. The district court's opinion appears to be grounded on the assumption that the circuit court's interpretation of § 193.11(3), Florida Statutes, F.S.A., is of "doubtful constitutionality." The district court of appeal was correct in holding that "just valuation" as provided in the Constitution was synonymous with "full cash value" as provided in the statute but we find no basis for finding that § 193.11(3), Florida Statutes, F.S.A., was of "doubtful constitutionality."
The lower court also fell into error in holding that "full cash value" had reference to value for any and all potential uses. This interpretation ignored the legislative classification of agricultural lands for tax purposes on the basis of actual use which the legislature was authorized to make. It further ignores the power given the legislature in Section 1, Article IX, Florida Constitution, to provide for a "uniform and equal rate of taxation * * * and shall prescribe such regulations as shall secure a just valuation of all property." In Sanders v. Crapps, Fla. 1950, 45 So.2d 484, 487, this court said that this provision of the Constitution made it "the duty of the Legislature to prescribe regulations so as to secure a just valuation of all property."
In State ex rel. Atty. Gen., v. City of Avon Park, 108 Fla. 641, 149 So. 409, 416 (1933), this court said:
"The organic requirements for `a uniform and equal rate of taxation' and `a just valuation of all' property, do not forbid but contemplate proper classification of property in making just valuations for taxation. * * *"
That is exactly what the legislature did when it enacted § 193.11(3), Florida Statutes, F.S.A. The said act classified property being used for agricultural purposes in a category by itself for assessment purposes and directed that it be assessed as "agricultural lands upon an acreage basis" when so used. The only restriction on the legislature's power appears to be that it be "not arbitrary, unreasonable, and unjustly discriminatory, and apply similarly to all under like conditions." State v. City of Miami, 103 Fla. 54, 137 So. 261, 265 (1931); Levy v. Smith, 4 Fla. 154 (1851); Hayes v. Walker, 54 Fla. 163, 44 So. 747 (1907); and State ex rel. Atty. Gen. v. City of Avon Park, supra.
The terms and purpose of § 193.11(3), F.S.A., are so clear that they hardly admit of interpretation. State ex rel. Florida Jai Alai, Inc., v. State Racing Commission, Fla. 1959, 112 So.2d 825. In L. Maxcy, Inc. v. Federal Land Bank of Columbia, 111 Fla. 116, 150 So. 248 (1933), 112 Fla. 835, 151 So. 276, though different in many respects from the case at bar, there are similar aspects to the two cases and there are pronouncements in the latter case that could be said to be persuasive here.
When the concept "just valuation," "full cash value," "uniform and equal *838 rate of taxation" and others of similar import are read in connection with the requirements of § 193.11(3), Florida Statutes, F.S.A., they may be readily harmonized. In State ex rel. v. City of Avon Park, supra, and other cases above cited, this court has approved a practical application of the above concepts when directed by the legislature. If respondents had followed the directions given them in § 193.11(3), Florida Statutes, F.S.A., in making the assessments complained of, there would have been no foundation for petitioners' question one. As courts, we should never forget that in construing acts of the legislature, we are concerned only with the power of the legislature to enact the law. Our peculiar social and economic views have no place in such a consideration. We are required to look for a reason to uphold the act and to adopt any reasonable view that will do so.
Since we think there is nothing here but a question of interpretation, we have not discussed the doctrine that decision on constitutional grounds was necessary to determination of the cause and whether the opinion says so or not, such a finding was inherent in the judgment. Harrell's Candy Kitchen v. Sarasota-Manatee Airport Authority, Fla. 1959, 111 So.2d 439; Townsend v. Beck, 140 Fla. 553, 192 So. 390; and In Re Brown's Estate, Fla. 1960, 114 So.2d 522, and 117 So.2d 478.
We have examined every other question treated by petitioners, as well as those treated by respondents, and we think we have jurisdiction of the cause. We find that § 193.11(3), Florida Statutes, F.S.A., was well within the power of the legislature to enact, that the question presented is one of interpretation and that no constitutional question is presented, that certiorari should be, and is hereby, granted and that the judgment of the district court of appeal is quashed.
ROBERTS, C.J., and CALDWELL, J., concur.
THORNAL, J., concurs specially.
DREW, J., dissenting.
THOMAS and O'CONNELL, JJ., dissent and agree with DREW, J.
THORNAL, Justice (concurring specially).
I concur with opinion by Justice TERRELL for the reasons stated in my dissent in Franks v. Davis, Fla., 145 So.2d 228.

ON REHEARING GRANTED
TERRELL, Justice.
A rehearing was granted in this cause. Upon further consideration of the record, briefs and arguments of counsel for the respective parties, we adhere to the prior determination of said cause and to the opinion previously filed herein. Certiorari should be and is hereby granted and the judgment of the District Court of Appeal is quashed.
ROBERTS and CALDWELL, JJ., concur.
THORNAL, J., concurs specially with opinion.
DREW, C.J., dissents with opinion.
THOMAS and O'CONNELL, JJ., dissent.
THORNAL, Justice (concurring).
I concur in the order denying rehearing for the reason stated in my agreement to the original judgment herein.
DREW, Chief Justice (dissenting on rehearing granted).
I withdraw my original dissenting opinion and, after rehearing granted and oral *839 argument thereon, substitute therefor the following:
I agree that certiorari jurisdiction[1] is clear on the theory that the decision of the district court[2] in this case affects a class of constitutional officers because it construes a statute prescribing the duties of county tax assessors. In addition, the case presents a novel problem of appellate review in the companion appeal because of the initial treatment of constitutional principles in connection with a decision which purports to turn on statutory interpretation rather than validity.
The critical terms of the act construed, F.S. Section 193.11(3), F.S.A., are that "All lands being used for agricultural purposes shall be assessed as agricultural lands upon an acreage basis * * *." (emphasis supplied.) The district court found that this section provides only for the unit of assessment for such lands to be acres instead of lots or otherwise, and decided that petitioner's agricultural lands were properly assessed on the same standards applicable to all lands under the mandate of the earlier enactment in F.S. Section 193.11(1), F.S.A., that "The county assessor of taxes shall assess all property at its full cash value." It is plain, however, that this construction attributes no operative effect whatever to the words "as agricultural lands," and that without the language the statute would have precisely the meaning given it by the district court. The decision is therefore one which strikes, in part, a legislative enactment, and is rendered squarely upon the ground of constitutional impact permitting appeal to this Court and requiring disposition of those issues here.
The fundamental controversy, in my opinion, is controlled by the same reasoning and authority upon which the majority opinion was predicated in the recent decision in Franks v. Davis, Fla. 1962, 145 So.2d 228.
The controlling organic provision is Section 1, Article IX, of the Florida Constitution:
"The Legislature shall provide for a uniform and equal rate of taxation, except that it may provide for special rate or rates on intangible property * * * and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law for municipal, education, literary, scientific, religious or charitable purposes." (Emphasis supplied.)
The classification effected by the statute here involved is not, in fact, a classification of land on the basis of any inherent characteristic but instead is a "classification" of taxpayers or owners of taxable realty so as to single out those who choose or are able to subject their land to agricultural use and accord to that group alone the right to have the "just value" of their property determined on the basis of actual use rather than on the basis of the same criteria controlling the valuation of other property.
Whatever might be the validity of an act which classified taxable realty generally on the basis of actual use, an inequality is obvious when a law requires, as does this statute, a different assessment basis for parcels of land having identical salable or market value, whenever one parcel may be subjected to agricultural use. In any event, nowhere in the voluminous record at bar is there any effort to justify the classification attempted by demonstrating that the purpose of the act, i.e., to prevent consideration of potential uses in addition to actual use, has a unique relationship to the particular class affected, or that no other property shares the need for protection from market considerations for assessment valuation purposes.
The net effect of such a provision is to exempt, in the case of lands currently used *840 for agricultural purposes, that portion of any actual value attributable to other reasonably susceptible uses. As repeatedly adjudicated, any exemption outside the constitutionally prescribed classes must fall.
Neither does the legislative power include, under the direct ruling in the Franks decision, supra, the right to achieve indirectly that which cannot be done directly under the constitutional requirement of uniform rate:
"If rates cannot be varied directly, however, neither can that result be achieved indirectly by manipulation of the assessment basis upon which levy is made. Such is the recognized intendment of our provisions for a `uniform and equal rate of taxation' as well as a `just valuation of all property,' construed as securing equality of burden for ad valorem taxation in this State."
The express provision of our Constitution is that the sole property classification for which a different or special rate may be provided is that of intangible property. It is difficult indeed to see the necessity for this specific grant of the power of rate variation if the statutory classification at bar should be sustained.
For these reasons I can only conclude that the legislative power of classification in the execution of the constitutional mandates of "just valuation of all property" and provision for a "uniform and equal rate of taxation," Article IX, Section 1, Florida Constitution, even if it would permit classification of all property on the basis of actual rather than potential use in the determination of just value or full cash value, cannot justify a statutory prescription by which that standard is made applicable only to certain real property for the sole purpose of according to it a privilege. "Just valuation," in short, means valuation in relation to other property, the right of classification existing to correct inequalities and not to create them.
Examination of the entire text of this statute, Sec. 193.11(3), and subsequently enacted Sec. 193.201,[3] shows the bulk of the *841 legislative language to be devoted to the definition of "agricultural lands." These efforts, in my opinion, do not eliminate a further serious constitutional defect in the law  the impossibility of fair application on objective standards controlled by legislative rather than administrative prescription. The vesting of such powers in county officers would inevitably result in not one but sixty-seven standards for just valuation of lands potentially eligible for this statutory benefit.
The acreage assessment feature of the statute can be sustained, I think, only if we hold, as seems reasonable, that it relates solely to an assessment technique within the legislative prerogative and does not directly or materially affect the principles of valuation which control the assessor's determination of the just value of full cash value of this and other property.
The burden of taxation in the world in which we now live is one of concern to every citizen  not just those who own agricultural lands. The owners of resort hotels and businesses, operating in seasonal periods, are a class that inevitably have problems peculiar to them. Developers of large real estate subdivisions who hold lots for resale are another. The list is endless. A strict application of the ancient concept of equality and uniformity  buttressed by a myriad of court decisions and constitutional provisions  is the only way to prevent a complete erosion of these basic concepts in an area that has plagued men from time immemorial. We cannot  and must not  in my humble judgment make fish of one and fowl of the other.
With the utmost respect for and deference to my esteemed brothers I must  and do  dissent from the majority view.
The opinions already of record in this cause contain full treatment of the many arguments and prior decisions which enter into a fair interpretation of the applicable constitutional provision. Upon a full consideration of the numerous cases cited in the majority and dissenting opinions of the district court, I would approve the ultimate disposition of the cause by that court, which reversed the decree of the chancellor, and would discharge the writ heretofore issued in these proceedings.
THOMAS and O'CONNELL, JJ., concur.
NOTES
[1] Article V, Section 4, Florida Constitution, F.S.A.
[2] Fla.App., 147 So.2d 365.
[3] Sec. 193.11(3):

"(3) All lands being used for agricultural purposes shall be assessed as agricultural lands upon an acreage basis, regardless of the fact that any or all of said lands are embraced in a plat of a subdivision or other real estate devolpment. Provided, `agricultural purposes' shall include only lands being used in a bona fide farming, pasture or grove operation by the lessee or owner, or some person in their employ. Provided shed nurseries, or nurseries under cover, shall not be termed agricultural and shall be excluded from this law. Lands which have not been used for agricultural purposes prior to the effective date of this law shall be prima face subject to assessment on the same basis as assessed for the previous year, and any demand for a reassessment of such lands for agricultural purposes shall be subject to the severest scrutiny of the county tax assessor to the end that the lands shall be classified properly."
Section 193.201:
"(1) The board of county commissioners of any county in the state is hereby authorized and empowered in its discretion to zone areas in the county exclusively used for agricultural purposes as agricultural lands; provided said lands have been used exclusively for agricultural purposes for five years prior to such zoning.
* * * * *
"(4) For the purpose of this section, `agricultural lands' shall include horticulture, floriculture, viticulture, forestry, dairy, livestock, poultry, bee and all forms of farm products and farm production.
"(5) The county tax assessor in assessing such lands so zoned and exclusively used for agricultural purposes as described and listed shall consider no factors other than those relative to such use. The tax assessor in assessing land within this class shall take into consideration the following use factors only: The cost of the property as agricultural land, the present replacement value of improvements thereon, quantity and size of the property, the condition of said property, the present cash value of said property as agricultural land, the location of said property, the character of the area or place in which said property is located and such other agricultural factors as may from time to time become applicable.
"(6) The board shall keep a record of such lands so zoned for tax purposes only and restricted for agricultural lands and shall remove such zoning restrictions whenever lands so zoned are used for any other purpose. * * *"