175 So.2d 521 (1965)
Wade H. LANIER, Jr., etc., et al., Appellants,
v.
Joe OVERSTREET and Wilma Overstreet, his wife, et al., Appellees.
No. 33571.
Supreme Court of Florida.
May 21, 1965.
*522 Murray W. Overstreet, Jr., and Russell S. Thacker, of Thacker & Thacker, Kissimmee, for appellants.
Daniel J. LeFevre, of Cargill & LeFevre, Winter Park, for appellees.
ROBERTS, Justice.
This is a direct appeal from a decree of the lower court upholding the validity of Section 193.11(3), Florida Statutes, F.S.A., under the authority of the decision of this court in Tyson v. Lanier, Fla. 1963, 156 So.2d 833.
The instant suit and the Tyson suit were filed in the Circuit Court of Osceola County at about the same time by owners of agricultural lands in that county for the purpose of invalidating and setting aside the assessment of their lands by the defendant-appellant Lanier, as Tax Assessor of Osceola County, for the year 1961. The basis of the attack was the failure of the Tax Assessor to comply with Section 193.11(3), supra, in making the assessment of their lands. In the instant suit, the Tax Assessor defended his action by alleging that the statute in question was unconstitutional under Section 1 of Article IX of the Florida Constitution, F.S.A., and the Fourteenth Amendment to the United States Constitution. After his answer containing this defense was filed, the instant suit was stayed pending the disposition of the companion suit, Tyson v. Lanier, supra.
Section 193.11(3), Florida Statutes, was enacted in 1957 by Chapter 57-195 and provides, in pertinent part, as follows:
"(3) All lands being used for agricultural purposes shall be assessed as agricultural lands upon an acreage basis, regardless of the fact that any or all of said lands are embraced in a plat of a subdivision or other real estate development. * * *"
The method followed by the Tax Assessor in assessing agricultural lands in Osceola County for the year 1961 is set out in some detail in the decision of the District Court of Appeal, Second District, in Lanier v. Tyson, Fla.App. 1962, 147 So.2d 365, and will not be repeated here. It suffices to say that the assessor did not evaluate the land upon the basis of its use as agricultural land alone but considered other potential uses. His interpretation of the statute was upheld by the District Court of appeal in a decision of a majority (two judges) of the court, with one judge dissenting. See Lanier v. Tyson, supra, .147 So.2d 365. On appeal to this court (jurisdiction attaching under our power to review decisions relating to the duties of a class of constitutional officers), the decision of the District Court of Appeal was quashed. Tyson v. Lanier, supra, 156 So.2d 833.
In their respective decisions, both the District Court of Appeal and this court disavowed any intention to pass on the constitutionality of the statute in question and said that the question presented was one of interpretation only. In our decision, it was stated that the appellate court's and the Tax Assessor's interpretation of the Act "ignored the legislative classification of agricultural lands for tax purposes on the basis of actual use," as well as the legislative power under Section 1 of Article IX to prescribe regulations so as to secure a just valuation of all property. And we note, parenthetically, that this court's interpretation of the Act was affirmed by the Legislature in a 1963 amendment thereto, providing that "* * * [this subsection] shall not be construed, interpreted, or applied so as to permit lands being used for agricultural purposes to be assessed *523 other than as agricultural lands and upon an acreage basis." Ch. 63-245, Acts of 1963.
On this appeal we are, however, squarely presented with the question of the constitutionality vel non of Section 193.11(3), supra, under Section 1 of Article IX, Fla. Const., and the Fourteenth Amendment to the United States Constitution. Section 1 of Article IX, insofar as here pertinent, provides that
"The Legislature shall provide for a uniform and equal rate of taxation * * * and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal * * *."
It is settled that the "uniformity" requirement of this provision is applicable to the rate of taxation only and not to legislative regulations to secure a "just valuation" of property. See Rorick v. Reconstruction Finance Corp., 144 Fla. 539, 198 So. 494; Schleman v. Connecticut General Life Insurance Co., 151 Fla. 96, 9 So.2d 197. The organic requirements of Section 1 of Article IX do not forbid the classification of property in providing for the "just valuation" of taxable property; on the contrary, the organic mandate to the Legislature to "prescribe such regulations as shall secure a just valuation of all property" contemplates such classifications  subject, of course, to the fundamental organic requirements of due process and equal protection guaranteed by our state and federal constitutions. See State ex rel. Attorney General v. City of Avon Park, 1933, 108 Fla. 641, 149 So. 409, 416; Sanders v. Crapps, Fla. 1950, 45 So.2d 484, 487; cf. Franks v. Davis, Fla. 1962, 145 So.2d 228, in which a legislative directive to assess stock-in-trade at 25 percent of its invoice cost was invalidated, a majority of the court having the view that such valuation had no reasonable relationship to the true or just value of such personal property. As in the case of other legislative classifications, if a legislative directive designed to secure a just valuation of a particular class of taxable property is reasonable, not arbitrary or unjustly discriminatory, and applicable alike to all similarly situated, it should be upheld by the courts. State v. City of Miami, 1931, 103 Fla. 54, 137 So. 261, 265. See also Levy v. Smith, 1851, 4 Fla. 154; Hayes v. Walker, 1907, 54 Fla. 163, 44 So. 747; and State ex rel. Attorney General v. City of Avon Park, supra, 149 So. 409.
The appellants' contention that Section 193.11(3) provides, in effect, for an unconstitutional partial exemption of this particular class of property, is without merit. The argument here is that property currently used for agricultural purposes may have a potential value far in excess of its value as agricultural land, attributable to other uses to which it is reasonably susceptible; that other classes of property  residential, commercial, recreational, etc.  have not been singled out by the Legislature and required to be assessed according to their current use without regard to their value for other reasonably susceptible uses, and that to sustain the legislative directive as to agricultural lands would, in effect, grant a partial exemption to such lands, commensurate with such additional potential value, and would also unjustly discriminate against all other classes of taxable property.
The short answer to this contention is that there is nothing in the legislative regulations respecting the "just valuation" of taxable property to authorize the assessment of property in accordance with a potential use which might be made of the property at some future time. In this state, the ad valorem tax on real and personal property accrues as of January 1st of the tax year; and the county tax assessor is required to assess the taxable property in his county and make out his assessment roll as of the 1st day of January of each year. Section 193.11(1), Fla. Stat., F.S.A. The character of a particular parcel  whether as improved or unimproved *524 land, see Sec. 193.11(4), Fla. Stat., F.S.A., or as homestead property, see Section 192.141, Fla. Stat., F.S.A.  is determined as of January 1st and continues throughout the tax year regardless of any change in its character during that year. And all of the legislative directives in this field appear to have been designed to make sure that, in doubtful areas, the assessment will be made on the basis of the actual use to which the property is designed to be put during the particular tax year. See L. Maxcy, Inc. v. Federal Land Bank of Columbia, 1933, 111 Fla. 116, 150 So. 248, upholding Section 193.20, Fla. Stat., F.S.A., which was a legislative directive that nonbearing fruit trees "shall not be considered as adding any value" to the property. This court said that the statute in question
"* * * does not provide for an unconstitutional exemption of part of the value of lands for purposes of taxation. On the contrary, the statute contemplates that, in the annual assessment of lands for taxation, the value of nonbearing trees thereon shall not be considered as adding any present value to the land for taxation purposes, but shall be considered only as a potential asset to be fully taxed and the state compensated by the taxation thereof, when a state of practical maturity of the trees shall have been realized."
Another legislative directive providing a practical guide to tax assessors to assure that the land will be assessed in accordance with its actual character during the tax year is found in Section 192.31(2), Fla. Stat., F.S.A., requiring platted lands to be assessed on the same basis as unplatted lands until 60 percent of the lands in one plat have been sold as individual lots.
The latest legislative directive on this subject, Ch. 63-250, Acts of 1963, appearing as Section 193.021, Fla. Stat. 1963, F.S.A., is in accord with its previous pronouncements in this field. By authorizing tax assessors to consider, as one of the factors "[i]n arriving at a just valuation" of property, the use to which the property "can be expected to be put in the immediate future" (emphasis added), the Legislature has, under the familiar rule of expressio unius est exclusio alterius, prohibited tax assessors from considering potential uses to which the property is reasonably susceptible and to which it might possibly be put in some future tax year or, even, during the current tax year. To be considered, the use must be expected, not merely potential or a "reasonably susceptible" type of use; it must be expected immediately, not at some vague uncertain time in the future. The reason for the legislative policy in this respect was well stated by Judge White in his scholarly dissenting opinion in Lanier v. Tyson, supra, 147 So.2d 365, as follows:
"Assessed valuations of land based on estimates of its highest and best potential, as distinguished from present bona fide use, are bound to be largely conjectural; and when an assessor, contrary to legislative intent and direction, determines that land despite its present value has a truly higher present value because of its potential for some other `higher' purpose, he indulges in unwarranted speculation and does violence to the constitutional and statutory objective of just valuation. The assessor, like the courts, should operate within the record and not de hors it."
It can thus be seen that no preferential treatment has been accorded the agriculturist who desires to retain his property as such as against the encroachment of an expanding urban community. If and when he puts his agricultural land on the market for sale for a "higher and better" use  or, at least, one more valuable than an agricultural use  the property would no doubt no longer qualify as one "being used" for the agricultural purposes named in the statute and thus not within the intendment thereof. This question is not, however, presented here and is not decided.
*525 For the reasons stated, we hold that Section 193.11(3) is a valid legislative classification designed to secure a "just valuation" of agricultural lands. Accordingly, the decree of the lower court so holding should be and it is hereby
Affirmed.
THORNAL, CALDWELL and ERVIN, JJ., concur.
DREW, C.J., dissents with opinion.
THOMAS and O'CONNELL, JJ., dissent and concur with DREW, C.J.
DREW, Chief Justice (dissenting).
I respectfully dissent from the opinion prepared for the Court by Mr. Justice Roberts in this case. No useful purpose will be served by reiterating the views expressed in my dissent in Tyson v. Lanier, 156 So.2d 833, text 838. Events which have transpired subsequent to that decision have confirmed the prophecies therein contained. For example, it is stated in the dissent above referred to "Developers of large real estate subdivisions who hold lots for resale * * * are a class that inevitably have problems peculiar to them." There is now pending in this Court a case involving the validity of an act pursuant to which the tax assessor of one of Florida's counties assesses unsold lots in subdivisions at only a fraction of their real value until such time as some 60% of all the lots therein are disposed of. In another case, Matheson v. Elcook, Tax Assessor, case no. 64-622 of the District Court of Appeal, Third District, 173 So.2d 164, that court held that, inasmuch as some 67.89 acres of land on an island in Dade County had been operated by the owners as a coconut plantation for more than forty years that such real estate under the provisions of paragraph 193.11 (3), Florida Statutes, F.S.A., had to be assessed at a valuation of somewhere between $800 and $3000 per acre in spite of the fact that the land had an admittedly cash value of $2,359,600. It is common knowledge that since the rendition of the opinion in Tyson v. Lanier in 1963 much confusion has prevailed in the assessment of real property in this State.
The above case was first argued before this Court on January 8, 1963. It was pending in this Court during the entire 1963 session of the Florida Legislature during which what is now Chapter 193.021 was enacted. It should be recalled that the District Court of Appeal, Second District, in an opinion rendered August 22, 1962, limited the application of the subject act to the requirement that agricultural lands should be assessed upon an acreage basis regardless of the fact that any or all of said lands are embraced in the plat of a subdivision or other real estate development but required that such lands be valued for tax purposes as any other land. During the entire session of the Legislature of 1963 this decision of the District Court was the law of this State. When the Legislature was considering the enactment of what is now Section 193.021 we must assume that they were cognizant of this decision and that such legislative action was based upon the premise that 193.11 had been construed merely to require that agricultural lands should be assessed upon an acreage basis and not in lots. It is, therefore, apparent that 193.021 enacted during the 1963 session of the Legislature and with the foregoing facts in mind was designed to cover and include within its terms all real estate including agricultural lands.
Surely it is most reasonable to assume that the clear intent of the Legislature was for tax assessors to read into the already existing statutes Section 193.021 in order that uniformity and equality of assessments might be reached in land valuation for tax purposes.
It is my view that Chapter 193.021, Florida Statutes 1963, sets forth the factors that must be considered by each of the 67 constitutional tax assessors of this State in *526 valuing real property for the purpose of taxation and that said section is all-inclusive and was meant by the Legislature to embrace within and absorb all former statutes  particularly 193.11  relating to the subject of assessment of real property for tax purposes. In no other way can the constitutional mandate for equality and uniformity be attained. To recognize the power of the Legislature to grant exemptions from taxation to certain classes  and that's what it amounts to  will be to destroy the ad valorem taxing system in this State and to place the burden of government on those who are not fortunate enough to be brought within a favored class. The Legislature has no power, under our Constitution, to exempt any property from taxation. If this is to be changed, it should be done by amendment to the Constitution and not by edict of this Court.
I, therefore, respectfully dissent.
THOMAS and O'CONNELL, JJ., concur.