## JEFFREYS v. TAX ASSESSOR, et al.
No. 66-7305-E.

Circuit Court, Duval County.

April 10, 1968.

William C. Guthrie, Jr. and J. Turner Butler, both of Jacksonville, for the plaintiff.

Walter C. Shea, J. Henry Blount, William F. Marr, W. Joe Sears, Jr., and Frank X. Friedmann of Rogers, Towers, Bailey, Jones & Gay, all of Jacksonville, for the defendants.

WILLIAM L. DURDEN, Circuit Judge.

*Final judgment:* This case is before the court at the conclusion of the plaintiff's evidence upon defendant Robert A. Mallard's motion for involuntary dismissal of the action under Rule 1.420 (b), Florida Rules of Civil Procedure. The court has considered the facts and the law and concluded that plaintiff has not shown a right to relief.

### Jurisdiction and parties

This action involves the legality of the ad valorem real property tax assessment placed on the subject property for the years 1966 and 1967. The circuit courts of this state are granted exclusive original jurisdiction in article V, §6, of the Florida constitution of tax assessment cases. Plaintiff here requests relief

under §193.11(3), Florida Statutes (the "agricultural assessment statute"). Plaintiff has met the conditions precedent to relief of (1) returning the property to the tax assessor alleging a bona fide agricultural operation and (2) protesting the failure of the tax assessor to accord plaintiff such relief to the board of county commissioners sitting as a board of tax equalization. Stiles v. Brown, 177 So.2d 672 (Fla.App. 1965); and Stiles v. Brown, 182 So.2d 612 (Fla. 1966). The court is, therefore, required by §196.01, Florida Statutes, to inquire into the legality of the challenged assessment.

The county tax collector and the state comptroller are indispensable parties to an action contesting the validity of a tax assessment. §§196.03 and 196.14, Florida Statutes. The tax assessor is a proper party under §196.03, Florida Statutes. The plaintiff here joined as a defendant the board of county commissioners as a board of tax equalization. The board answered allegations of the complaint directed specifically to the board (which were never proved up by plaintiff and were not in issue at the trial of this case).

### Basic issues created by pleadings

The plaintiff challenged the validity of the subject assessments on two grounds — the assessment is grossly in excess of the fair market value of the subject property; and the subject property was being used for agricultural purposes within the purview of §193.11(3), Florida Statutes. Plaintiff did not put on any evidence at the trial as to the value of the subject property. The single issue before the court is, therefore, whether the plaintiff has proved his claim for relief under the agricultural assessment statute.

At the conclusion of the plaintiff's evidence, the tax assessor moved for an involuntary dismissal on two independent grounds. The primary ground was that the plaintiff had not carried his burden of proof under the agricultural assessment statute. The tax assessor also took the position that regardless of whether plaintiff had proved a bona fide agricultural operation, the failure of plaintiff to prove that the assessment was in excess of the fair market value of the subject property was fatal. The court grants the defendant tax assessor's motion for involuntary dismissal on the grounds that the plaintiff has not carried his burden of proof under §193.11(3), Florida Statutes, but denies the motion on the alternative ground.

### Conclusions of law

#### Fair market value assessments

The Florida constitution commands the legislature to provide for a uniform and equal rate of taxation and to prescribe such legislation as shall secure a just valuation of all property, both real and personal. Florida constitution, article IX, §1. The legislature has enacted the "just valuation law" pursuant to this mandate and prescribed the several factors which the tax assessor must consider, insofar as relevant, in determining the assessed value of real property. Florida Statutes, §193.021.

The just value provisions of the Florida constitution have, in past years, been subject to numerous and often conflicting decisions. The Supreme Court has now settled the meaning of the terminology "just value." Walter v. Schuler, 176 So.2d 81 (Fla. 1965), affirming this court's decision below, 24 Fla.Supp. 116 (1965). "Just valuation" and "fair market value" are legally synonymous, and the term " 'fair market value' . . . may be established by the classic formula that it is the amount a purchaser, willing but not obliged to buy, would pay to one willing but not obliged to sell." 176 So.2d at 85 through 86.

An assessment or an assessment roll which is not within the gauge of 100% fair market value is illegal. The simplicity and wisdom, as well as the necessity, of requiring 100% fair market value assessments has been reiterated by the Supreme Court. Burns v. Butscher, 187 So.2d 594 (Fla. 1966); Butscher v. Dickinson, 196 So.2d 105 (Fla. 1966); and Conboy v. Colding, 200 So.2d 246 (Fla. 1967). The application of standards of fair market value to the assessment of real property has sent into limbo the mysticisms of assessments. The tax assessor's discretion is not removed but rather guided by the fair market value standard. Problems will arise upon which the authority and the experts in the field of real estate appraising are silent or in conflict. This type problem must be resolved by the judgment of the tax assessor.

#### Present use v. fair market value

The Supreme Court has mandated that the assessment standard is fair market value, and in accord with sound appraisal authority, the legislature has provided that an assessor must consider both present use and highest and best use in the immediate future in determining value. Walter v. Schuler, supra; and Florida Statutes, §193.021. The Supreme Court in holding

§193.11(3) constitutional determined that property may not be assessed on the basis of "a potential use which *might* be made of the property at some future time." Lanier v. Overstreet, 175 So.2d 521, 523 (Fla. 1965); and Markham v. Blount, 175 So.2d 526 (Fla. 1965). The Supreme Court decisions are not interpreted by this court as proscribing the application of the standard of fair market value by limiting the tax assessor to a consideration of the present or actual use of the subject property.

The court in *Lanier* and *Markham* held that the tax assessor should not speculate and conjecture as to potential future uses. In context, this court understands the Supreme Court to have held that a tax assessor should not speculate, that is, theorize from conjectures without sufficient evidence, and should not conjecture, that is, infer from defective or presumptive evidence. This is not in conflict with the manner in which the factor of highest and best use is considered by experts in the field of real estate appraising.

### Agricultural assessment statute

The agricultural assessment statute, §193.11(3), Florida Statutes, provides that lands being used for agricultural purposes shall be assessed as such upon an acreage basis. Agricultural purposes include lands being used in bona fide forestry operations. This case involves 1966 and 1967 assessments, and any relief to which the plaintiff is due must be accorded under §193.11(3).

The "agricultural zoning act" is §193.201, Florida Statutes. This statute has recently been amended, and the amendment provides in part that the provisions of §193.11(3) shall be suspended so long as the amendment to §193.201 remains in force. Florida Statutes, chapters 67-593 and and 67-117. The amendment to §193.201 is effective as of the 1968 tax year.

The issues arising under §193.11(3) are not rendered moot by the amendment to §193.201 since both statutes seek to accomplish the same end by different means. §193.201 requires the board of county commissioners to zone land being used for agricultural purposes as such and mandates that the tax assessor shall thereafter assess the land on an acreage basis. The landowner's remedy from a denial of a petition to the board of county commissioners for agricultural zoning would be judicial as in any other zoning matter. The issue would be, as in this case, whether the land is being used for bona fide agricultural purposes.

The amendment to §193.201 must be considered as indicative of legislative intent in this area. The provisions of subsections 4(a) and (b) are particularly relevant —

(4) (a) When property which is zoned as agricultural is diverted to another use or ceases to be used for agricultural purposes, the board shall reclassify such property as nonagricultural.

(b) The board may also reclassify lands zoned as agricultural as nonagricultural when there is contiguous urban or metropolitan development on two or more sides and when the board finds that the continued use of such lands for agricultural purposes will act as a deterrent to the timely and orderly expansion of the community.

The constitutionality of §193.11(3) was determined in split decisions in Lanier v. Overstreet, supra, and Markham v. Blount, supra. The majority opinions reasoned that the assessment of bona fide agricultural operations on an acreage basis considering present use for agriculture does not conflict with the constitutional requirement of just value assessments. Property must be assessed on the basis of its highest and best use in the immediate future and not on the basis of a speculative use.

The agricultural assessment statute is easy enough to apply to non-urban land actively cultivated for the production of agricultural commodities. Bona fide rural agricultural land has a highest and best use in the immediate future for that purpose. The line is exceedingly difficult to draw in many cases, particularly those involving vacant land in urban areas alleged to be used in a bona fide forestry operation. The Supreme Court has not rendered a definitive decision in this area, and the opinions of the district courts of appeal do not resolve the multitude of problems which exist in this area.

The Supreme Court discussed in detail the concept of highest and best use in the *Lanier* and *Markham* decisions, supra. Numerous textual authority in the field of real estate appraising exist on this subject. Several examples of classic definitions of the terminology "highest and best use" follow —

*Highest and best use* is defined as the most profitable use to which the property might be put or that use which will yield the highest return on investment. This use must be logical, likely, reasonably probable and proximate, and not such as is merely possible. Friedman, Edith J., *Encyclopedia of Real Estate Appraising,* p. 23 (3rd Ed. 1961).

Fundamental to the concept of value is the idea of highest and best use. This can be defined as follows: Highest and most profitable use is that use which is *most likely* to produce the greatest net return over a given period of time. Note especially those key phrases "net return" and "given period of time." American Institute of Real Estate Appraisers, *The Appraisal of Real Estate,* p. 40 (1951).

> A parcel of land at a given time is estimated to have only one *highest and best use*. By highest and best use is meant that possible and legal use or employment which will preserve the utility of the land and yield a net income flow that forms, when capitalized, the highest present value of the land. This concept of highest and best use is of great importance, for upon a proper understanding of it depends good city planning, profitable subdivision and development-of-land policies, and wise site utilization by individual or corporate owners. North, Nelson L. and Ring, Alfred A., *Real Estate Principles and Practices* (5th Ed. 1964).

The decisions of the Supreme Court and the appraising authority on the concept of highest and best use must be read by this court in light of the decisions of the district courts of appeal under §193.11(3). The Third District in the controversial decision in Matheson v. Elcook, 173 So.2d 164 (Fla.App. 1965), commonly referred to as the "coconut grove" case, deals with the agricultural assessment statute in a per curiam opinion. The facts are not stated in detail but it is clear that the land in question was admitted to have a fair market value substantially in excess of its value for agricultural purposes. The defendant tax assessor apparently took the position that the operation in question was not bona fide only because it was neither efficient nor profitable. The Third District responded to that contention as follows —

> There is nothing in the law that requires a person to operate a business efficiently or at a profit. We would have to reach that conclusion in order to affirm the judgment appealed. *Appellee has pointed out that this result could cause many situations of tax avoidance based on agricultural use of property, but we hasten to point out that before the taxpayer can take advantage of this statute he must demonstrate to the taxing authorities that this agricultural operation is bona fide, in good faith.* In this case no one questions the bona fides of the appellants' agricultural operation. 173 So.2d at 166. (Italics added.)

In the process of reasoning that a property owner must return his land to the tax assessor or protest to the board of equalization requesting agricultural treatment as a condition precedent to being accorded relief by the court under §193.11(3), the First District has also discussed the question of "bona fides" under the statute in Stiles v. Brown, 177 So.2d 672 (Fla.App. 1965) —

> The statute specifically provides that lands being used for "**** bona fide farming, pasture, grove, or forestry operation ****" are eligible for special treatment for taxation purposes. As we construe this portion of the statute, the intent of the property owner, of necessity, must be ascertained as to the utilization of his land. For instance, one of two abutting property owners, each having three thousand acres of timberland, may conduct a bona fide timber program while the other primarily utilizes his land as a game preserve with timber producing being incidental. A visual examination of the property by the tax

assessor would disclose a similar utilization of the lands, but the bona fides of the utilization of each tract for agricultural purposes would depend to some extent upon the subjective thinking of the landowner.

Or consider the obvious illustration of a speculative subdivision developer who places a few cows on urban land and calls it a ranch. Thus, it is the bona fides of the utilization by the landowner that makes the land eligible for the benefits of the statute, and the physical condition and appearance of the subject property is not of itself controlling. 177 So.2d at 676.

This court has the obligation to apply here the appellate decisions under §193.11(3), the statements of the legislative branch in this area and the applicable appraising authority. The two issues raised in this case by the authority are (1) whether the property is being used for agricultural purposes, and (2) whether the use qualifies as bona fide under the statute.

The first question is whether the land is being used agriculturally. Among the factors to be considered in making this determination, the following are relevant — (1) Whether the owner has made a good faith effort to have the property contribute to the agricultural economy of the county; (2) whether the evidence establishes a good faith effort by the owner to sufficiently and adequately care for the land or the livestock, etc., in question; and (3) whether the operation has been continuous. These factors are objective and can be determined in large part from physical observation of the land and documentary evidence as to income produced by the land and expenses incurred for the care of the land.

The second question is as to the bona fides of the operation and the qualification of the operation for agricultural treatment under §193.11(3). A determination of this question involves, among others, the following factors — (1) Whether the dominant use of the land is for agricultural purposes as distinguished from an incidental or temporary usage; (2) whether an agricultural usage of the subject property constitutes a non-conforming use which has either resulted in or requires a changed use; (3) whether the continued use of the land for agricultural purposes is a deterrent to the timely and orderly expansion of an urban area; (4) whether the property is located in a rural area as distinguished from an urban non-agricultural area; (5) whether in light of changing use of land in the area the return from an agricultural operation would be completely unfeasible economically. These factors involve both objective and subjective determinations.

The factors which have to be considered in determining whether property used to some extent agriculturally qualifies under either §193.11(3) or §193.201 may be combined into the simple question — What is the highest and best use, as that term is established by appraising authority, of the subject property in the *immediate* future? If the land has a highest and best use for agricultural purposes and is being used agriculturally, it qualifies. Otherwise, it does not.

The burden of proof to establish a bona fide timber operation under §193.11(3) is on the plaintiff. The plaintiff must offer evidence sufficient to allow the court to make necessary determinations as to the factors or standards established by applicable case law, statutes and appraising authority.

### Findings of fact

The primary problem with the plaintiff's evidence is what was not or could not be proved. Many essential questions were left unanswered by the plaintiff's proof. The decision for the court in ruling on the defendant tax assessor's motion for an involuntary dismissal at the conclusion of the plaintiff's evidence is to ascertain what has been proved and whether the evidence standing alone is sufficient to justify the requested relief.[1]

The subject property contains 66.6 acres and is located in the Arlington area of Duval County on the south side of Fort Caroline Road. The Arlington area in largest part is a densely populated residential area of urban Duval County. There has been substantial residential development in this area during the last ten to twelve years. This development is up to and around the subject property.

The subject property is designated on the 1966 and 1967 tax rolls by Real Estate No. 112986. The property was originally assessed on the preliminary tax roll for both years in the amount of $166,500. Plaintiff protested this value to the board of tax equalization in 1966 and 1967, and the board reduced the assessed

---

[1] It is relevant to note, as an example, that the substantial evidence as to the location of and the general area around the subject property is shown by the aerial photograph admitted at the beginning of the trial by stipulation as defendant's exhibit no. 1. The facts demonstrated by the aerial photograph are not essential to this court's determination, but since plaintiff used and referred to the aerial in presenting his evidence, even though it was marked as a defendant's exhibit, it has been considered by the court as a part of the plaintiff's evidence. A small aerial photograph introduced as defendant's exhibit no. 2 falls in this same category.

value to $123,200 for both years. If the land were accorded agricultural treatment, the assessed value for both years would be in the amount of $3,300.

The subject property was purchased by plaintiff in 1948. The property when purchased had a stand of pine timber mixed with scrub hardwoods. In 1956 the plaintiff had what is called an intermediate or improvement cut made on the subject property. In either late 1965 or early 1966 the plaintiff had what is called a final harvest of the land and completely clear cut the property of marketable pine timber.

It is clear that after the final harvest of the land there was no marketable timber left remaining on the land. Plaintiff presented evidence that he intended to replant the land with pine seedlings. As of the day of the trial, this had not been accomplished.

An agricultural expert and the Duval County forester testified in plaintiff's behalf. The experts testified that the land had to lie fallow for some period of time before replanting. The county forester testified that at plaintiff's request he was making arrangements to have the land replanted and a planting contract was introduced into evidence. This evidence was rendered weightless by statements of the agricultural expert and the county farm forester on cross-examination which lead the court to conclude that these forestry experts would not recommend replanting this land for *agricultural purposes*.

The plaintiff and his agricultural experts testified that the following was the only activity carried on (and the only activity required) by the plaintiff prior to 1965 — (1) plaintiff purchased the tract of land with pine timber already growing; (2) plaintiff cut several fire lines in the land for protection purposes; and (3) plaintiff cut the timber off the land. Plaintiff's agricultural expert testified that if the land were replanted, it could be conceivably between 25 and 200 years before the plaintiff received an economic return from the land. Plaintiff's contention is that the evidence of an intent to plant pine seedlings, combined with some history of an agricultural operation, proves a claim for relief under §193.11(3). Presumably, this operation would continue for a period of time between 25 and 200 years and the only activity required on the part of the plaintiff would be to maintain several fire lines and eventually cut the timber.

The actions of plaintiff prior to 1965 may have been in accord with recommended forestry practice, and the land may have been entitled to agricultural treatment during those periods of time.

On the facts before the court at the conclusion of the plaintiff's case, insufficient evidence has been presented to establish a bona fide timber operation as of January 1, 1966 and January 1, 1967, in light of the factors or standards determined by the court to be applicable in making a decision under §193.11(3), Florida Statutes.

The factual conclusion of the court stated in its simplest terms is that plaintiff has not proved that either the present use or the highest and best use in the immediate future of the subject property is for bona fide agricultural purposes. If any owner of unimproved acreage in even an urban area of Duval County who entered into a contract for planting pine seedlings at some future time is entitled to agricultural treatment under §193.11 (3), Florida Statutes, or agricultural zoning under §193.201, Florida Statutes, then one of the urban counties in one of the most populated states is or easily can be largely agricultural. This court does not conceive that result to be in accord with the law.

## Conclusion

Plaintiff has not carried his burden of proof to establish a bona fide forestry operation within the purview of §193.11(3), Florida Statutes. The evidence presented and the failure to present certain evidence leads the court to conclude that the plaintiff is not in good faith using the subject property for bona fide agricultural purposes. Reaching this conclusion, the court must hold that since the assessed value of the subject property was not challenged at trial as being in excess of the fair market value of the subject property, no portion of the assessment should be stricken as illegal.

It is therefore ordered that —

(1) The ad valorem real property taxes assessed on the subject property by the defendant tax collector for the years 1966 and 1967 are not excessive and no part of those taxes should be stricken as illegal.

(2) There is due and owing from plaintiff to defendant tax collector ad valorem real property taxes for the years 1966 and 1967 in an amount equal to the tax originally assessed for those years less amounts heretofore tendered by plaintiff into the registry of the court and less any discount due plaintiff on the amounts tendered.

(3) There is, further, due and owing from plaintiff to defendant tax collector interest on the additional ad valorem real property tax found to be due by this final judgment at the rate of 6% per annum from April 1 of the year following the tax year in question to the date of this final judgment and hereafter at the same rate of interest until the date of payment or until the expiration of 60 days from the date of this final judgment, whichever comes first.

(4) After the expiration of 60 days from the date of this final judgment, defendant tax collector may collect interest' at those rates provided in §193.51, Florida Statutes, on the aforesaid additional tax found to be due and shall have available to him each and every collection procedure for the enforcement of ad valorem real property taxes provided under §193.51, Florida Statutes.

(5) Neither party shall recover costs from the other.