### BLAIR, State Attorney v. MOBILE HOME COMMUNITIES, Inc.

No. 75-3115.

Circuit Court, Sarasota County.

July 23, 1976.

John J. Blair, State Attorney, Twelfth Judicial Circuit, plaintiff.

William Wilner and Charles D. Bailey, both of Sarasota, for the defendant.

EVELYN M. GOBBIE, Circuit Judge.

*Final judgment:* This action was filed by the state attorney pursuant to §83.73, Florida Statutes, for an injunction restraining defendant Mobile Home Communities, Inc. from violation of §83.71, Florida Statutes, which provides, in part —

> "No mobile home park shall make or enforce any rule which shall deny or abridge the right of any resident of such mobile home park or any owner of a mobile home located in such park to sell said mobile home within the park or which shall require the resident or owner to remove the mobile home from the park solely on the basis of the sale thereof."

On the evidence presented, the court finds as follows —

Defendant is the owner and operator of Windmill Village Mobile Home Park in Sarasota County. The park consists of 470 lots, together with common areas including a club house, swimming pool, therapy pool and shuffle board courts. Each resident of the park owns his own mobile home, but leases his lot from the defendant pursuant to a written rental agreement. The agreement incorporates by reference certain park rules one of which provides —

> "A resident wishing to sell his home may, at his request, use our salesmen to help on a consignment contract with predetermined selling prices and commission rates. Selling tools such as signs will not be allowed to be displayed in windows, on the home, or appurtenances, nor on the lawn."

As indicated by the foregoing rule, defendant provides a service to the tenants whereby they can list their mobile homes for sale with defendant's sales office. The tenants are not, however, required to do so, 'and during the previous year, defendant assisted in marketing only 22 of the 63 mobile homes sold within the park. Of the remaining sales, 8 were handled by other brokers and 33 were handled by the mobile home owner without the assistance of a broker. Defendant received a commission only on the 22 sales in which it assisted. It is noteworthy that defendant's sales office in each instance complied with the park rule and refrained from placing "For Sale" signs in the designated areas.

Although the park rule does not permit signs to be placed on the mobile homes or lots, defendant does permit the display of signs in the recreation hall where it provides a permanent bulletin board for that purpose. The evidence also showed that there are other means of marketing the mobile home, including the employment of either independent brokers or the park sales office, the place-

ment of advertisements in newspapers or in the park newsletter, and the use of "word of mouth" communications between park residents and potential buyers.

The testimony of several park residents indicated general concern over increased traffic resulting from the display of "For Sale" signs on the premises of the mobile homes. This problem is, apparently, caused by the large number of potential buyers or speculators who aimlessly drive around the park searching for "For Sale" signs. There was also general concern over the susceptibility to vandalism of a vacant mobile home with a "For Sale" sign posted on the premises, and the depressive effect on property values caused by the signs since there are as many as 10% of the homes on the market at any given time.

There was no evidence that any tenant of defendant's mobile home park was ever required to remove his mobile home from the park in order to market or sell it.

The state contends that the park rule is violative of §83.71, Florida Statutes, because it denies or abridges the right of the mobile home owner to sell his mobile home within the park. The court cannot agree with this contention.

The state relies on Attorney General's Opinion Number 075-191 (1975) and *Shevin v. Bollen,* Case No. 75-947-CA, circuit court of the nineteenth judicial circuit, in and for Martin County, Florida (1976). It is this court's opinion that neither of the cited authorities are controlling.

In ascertaining whether the rule is violative of the statute, the court must first determine the manner in which the statute should be construed. The primary guide to statutory interpretation is the legislative intent. *Tyson v. Lanier,* 156 So.2d 833 (Fla. 1963).

A statute should be construed in its entirety and as a whole. Significance and effect must, if possible, be accorded to every word, phrase, sentence and part of the statute. *Wilensky v. Fields,* 267 So.2d 1 (Fla. 1972). The phrase "deny or abridge the right . . . to sell" must, therefore, be read in conjunction with the phrase "within the park." The court must also afford meaning to the phrase "or which shall require the resident . . . to remove the mobile home from the park solely on the basis of the sale thereof." Construing these phrases together, it appears that in enacting the statute, the legislature was attempting to provide protection to the mobile home owner by allowing him to convey title to his mobile home while it remains on the mobile home park lot.

It also appears that the statute is intended to protect the mobile home owner from having to pay the park owner a commission on

sales in which the park owner was not the procuring cause. See Hightower, *Mobile Home Park Practices: the Legal Relationship between Mobile Home Park Owners and Tenants Who Own Mobile Homes,* 3 Fla. St. L. Rev. 103, 116, 117 (1975). In the case of *State v. Henley,* 41 Fla. Supp. 190, 192 (1975), this court construed §83.71, Florida Statutes, as follows —

> "The statute under consideration appears to be designed to protect the resident against paying the park owner a commission on sales which were not earned — but not prohibit him from keeping his park upgraded."

There is no evidence that defendant has engaged in practices running counter to either of the foregoing legislative purposes.

Furthermore, defendant's rule does not deny or abridge the right to sell. The right to sell is the right to alienate or transfer title to property. The rule does not in any way operate to restrict the alienation or transfer of title to a mobile home. It merely curtails one form of *advertising* the sale of the mobile home. The fact that 63 mobile homes were sold during the previous year is indicative that the rule does not deny or abridge the right to sell.

For puroposes of this judgment, the court must also concern itself with the meaning of the word "abridge." This word appears in the First Amendment to the constitution of the United States which contains a prohibition against the enactment of laws which would abridge the freedom of speech. Notwithstanding the use of the word "abridge," it has been held that freedom of speech is not an unlimited, unqualified right, but its societal value must, on occasion, be subordinated to other values and considerations. *Dennis v. United States,* 341 U. S. 494 (1951); *Kovacs v. Cooper,* 336 U. S. 77 (1949); *Poulos v. New Hampshire,* 345 U. S. 395, 405 (1952).

It thus appears that the word "abridge" has been construed to mean "unreasonably curtail." The determination of what constitutes an unreasonable curtailment necessarily involves a balancing of interests. *American Communications Ass'n. v. Doubs,* 339 U. S. 382, 399 (1949). In this regard, the park residents are composed of two interest groups. The first group consists of the vast majority of the park residents who intend to continue residing within the park indefinitely. These residents want to maintain their safety from excess traffic, their security against crime, their freedom from congested parking, and to preserve their property values. They chose defendant's park because of the existence of such rules and in reliance on the fact that the rules would not be violated. The second interest group has characteristics similar to

the first interest group with one major difference: they have decided to move. This group, consisting of about 10% of the park residents, is concerned primarily with realizing a return on the mobile home investment. It is more concerned with economic self interest than with the safety, security and general aesthetics of the park.

Because of the uniqueness of the problems of mobile home park living there is a resultant necessity for a greater degree of control over and limitation upon the rights of the individual park resident than might be tolerated given more traditional forms of residential neighborhoods. Inherent in the mobile home park concept is the principle that to promote the health, happiness and peace of mind of the majority of the residents since they are living in such close proximity and using facilities in common, each resident must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property in a conventional neighborhood. The statute and the rule combine to achieve a proper balance between the competing interest groups.

For the foregoing reasons, it is the opinion of this court that the defendant's rule does not violate provisions of §83.71, Florida Statutes, and it is therefore adjudged that the injunction sought by the state attorney is denied.