209 So.2d 262 (1968)
Marie Certain WILLIAMS and A.M. Williams, Her Husband, Appellants,
v.
Clyde H. SIMPSON, As Tax Collector of Duval County, Florida, and Fred O. Dickinson, Jr., As Comptroller of the State of Florida, Appellees.
No. J-158.
District Court of Appeal of Florida. First District.
April 18, 1968.
Rehearing Denied May 10, 1968.
*263 McCarthy, Adams & Foote, Jacksonville, for appellants.
Rogers, Towers, Bailey, Jones & Gay, and W. Joe Sears, Jr., Jacksonville, for appellees.
RAWLS, Acting Chief Judge.
The plaintiffs, Mr. and Mrs. Williams, have appealed from a final judgment finding that their property was assessed in excess of the fair market value and fixing the assessment at $30,500 for the years 1965 and 1966.
The sole question is whether the trial judge erred in adopting the appraisal of expert Osborn as the fair market value of plaintiffs' property for the years 1965 and 1966.
The property consists of two parcels totaling two and one-half acres, located about four miles east of the city limits of Jacksonville. On the south 240 feet border on Beach Boulevard, a heavily traveled highway, and on the north approximately 63 feet border on Big Pottsburg Creek. The street frontage to a 100-foot depth is zoned residence "C" which permits apartment houses, and the rear portion is zoned residence "A", single family dwellings. All the property located on the north side of Beach Boulevard and bordering on Big Pottsburg Creek, from the bridge to East Street, is zoned residential, as is the subject property. Most of the property bordering on Beach Boulevard in this area is zoned business, except all property adjoining and the property across Beach Boulevard from plaintiffs' property is zoned residential. Parcel 1 is a long slender strip of land presently being used in connection with plaintiffs' residence which is located on an adjoining parcel.
The defendant Tax Collector's appraiser, Frank K. Osborn, deposed that the property in question could and should be rezoned, the front portion changed to Business A or A-1 and the rear portion changed from Residence "A" to Residence "C" for apartments, and if it is rezoned then it would have the value he anticipated. He deposed that he was not familiar with Section 193.021, Florida Statutes, F.S.A., which sets forth the statutory criteria to be considered by tax assessors in arriving at a just valuation as required by Section 1, Article IX, Florida Constitution, F.S.A., Osborn's appraisal states:
"HIGHEST AND BEST USE:
"Considering the future potential of this property, including increased demand as a result of the proposed Expressway to the west, it is apparent that the highest and best use of this property will be for income-producing property. Inasmuch as there is common ownership eastward to the Pottsburg Creek, which offers considerable beauty enhancement, it would appear that apartments might be considered. On the basis of Beach Blvd. frontage, however, it would appear that the frontage has ultimate potential for commercial usage.
* * * * * *
"After careful consideration of the comparable sales detailed in this report, of which there is adequate sales data to support a reasonable value conclusion, it is my opinion that the Fair Market Value of the property should be estimated at $200/FF which, for 239.5 FF was $47,900. Although the market reflects this value, it is obvious that all land in this vicinity cannot be immediately utilized. *264 It would appear that usage of this might be deferred an estimated five years which value is discounted as follows: [Emphasis supplied.]

 "47,900 X .XXXXXXXXXX (factor PW of $1, discounted 5 years
 hence, @ 6% = $35,868
 "Less Ad Valorem Taxes 3% (100% assessed value x 30
 mills) x 5 years = 5,380
 _______
 "Present Value Pending Market Usage $30,488
 "Rounded $30,500."

Osborn's "comparable" sales were almost exclusively business property sales. The sales he used to show what he calls a "definite value trend" are all zoned business, are designated by Osborn himself as "better locations" or "service station location." The one "comparable" sale which Osborn lists as "similar" has frontage on two streets  Beach Boulevard and Hogan Road  the Beach Boulevard portion being zoned business.
The appellants contend that Osborn's appraisal, admittedly based upon "ultimate potential for commercial usage" which Osborn estimated would not come into being for five years and further based upon the assumption that the property should and could be rezoned, was an appraisal based upon speculation and conjecture and, therefore, is not competent evidence to be considered in determining valuation for tax assessment purposes. We agree.
Unlike appraisals made for eminent domain, estates and other purposes, assessments of property for tax purposes must comply with Section 1, Article IX, Constitution of the State of Florida, and the 1963 Statute, Section 193.021, which implements the constitutional provision. With reference to this statute, the Florida Supreme Court in Walter v. Schuler[1] stated:
"[W]e regard the Act as an attempt by the legislature to pin the assessors more firmly to the Constitutional mandate."
The statute provides that in assessing real and personal property, the following factors shall be taken into consideration:
"(1) The present cash value of the property;
"(2) The highest and best use to which the property can be expected to be put in the immediate future; and the present use of the property; [Emphasis supplied.]
"(3) The location of said property;
"(4) The quantity or size of said property;
"(5) The cost of said property and the present replacement value of any improvements thereon;
"(6) The condition of said property;
"(7) The income from said property."
The Walter case held that "fair market value" and "just valuation" are "legally synonymous" and[2]
"* * * may be established by the classic formula that it is the amount a `purchaser willing but not obliged to buy, would pay to one willing but not obliged to sell.' Root v. Wood, 155 Fla. 613, 21 So.2d 133.
"If assessors will apply that test and in doing so observe the seven guideposts in Sec. 193.021, justness should be secured to the taxpayer and the tangle *265 that has developed should be unraveled." [Emphasis supplied.]
The statutory guidepost No. 2 has been construed by the Florida Supreme Court in Lanier v. Overstreet[3] as follows:
"By authorizing tax assessors to consider, as one of the factors `[i]n arriving at a just valuation' of property, the use to which the property `can be expected to be put in the immediate future' (emphasis added), the Legislature has, under the familiar rule of expressio unius est exclusio alterius, prohibited tax assessors from considering potential uses to which the property is reasonably susceptible and to which it might possibly be put in some future tax year or, even, during the current tax year. To be considered, the use must be expected, not merely potential or a `reasonably susceptible' type of use; it must be expected immediately, not at some vague uncertain time in the future. The reason for the legislative policy in this respect was well stated by Judge White in his scholarly dissenting opinion in Lanier v. Tyson, supra, Fla.App., 147 So.2d 365, as follows:
"`Assessed valuations of land based on estimates of its highest and best potential, as distinguished from present bona fide use, are bound to be largely conjectural; and when an assessor, contrary to legislative intent and direction, determines that land despite its present value has a truly higher present value because of its potential for some other "higher" purpose, he indulges in unwarranted speculation and does violence to the constitutional and statutory objective of just valuation. The assessor, like the courts, should operate within the record and not de hors it.'"
Osborn admitted that his appraisal did not take into consideration the seven statutory guideposts as required by the Walter case. On the contrary, his appraisal is expressly based upon a future potential use which he estimates will not come into being for this particular property for five years  a basis prohibited by the statute.[4] This is not to be construed as holding that a present demand for the property in question generated by a future potential would not increase its present fair market value, for it would. However, there was no showing of the existence of any such demand here. The uncontradicted evidence is that there is an abundance of available vacant business sites in the area. Osborn's own appraisal states, "[I]t is obvious that all land in this vicinity cannot be immediately utilized * * *" for business purposes. The basis of his appraisal is in direct derogation of the statute which requires that the highest and best use to be considered is that which the property can be "expected to be put in the immediate future."
The trial judge in his final judgment rendered a scholarly opinion reviewing numerous appraisal texts, appellate decisions of this jurisdiction and foreign jurisdictions. He emphasized this Court's opinion in Board of Commissioners of State Institutions v. Tallahassee Bank & Trust Company,[5] in which we first discussed the so-called Texas rule, and he recognized that "* * * there may well be some fine distinctions between the future appellate decisions in Florida in the fields of eminent domain and ad valorem taxation." However, he concluded, "* * * nevertheless, both actions are bottomed upon the controlling premise of fair market value."
The so-called Texas rule has no application here. It is a rule for determining fair market value in eminent domain proceedings, and may be found in 29-A C.J.S. Eminent Domain § 160F.; Orgel on Valuation *266 Under Eminent Domain, Vol. 1, p. 141; Nichols on Eminent Domain, Second Edition, Vol. 1, p. 166, § 219. The rule is that in valuating property for eminent domain proceedings only lawful uses may be considered; thus where the property is zoned, only that use for which it is zoned can be considered, except where the trial judge is satisfied from the evidence that there is a reasonable probability that the restrictions may be lifted within a reasonable time.
The Florida Supreme Court in Board of Commissioners of State Institutions v. Tallahassee Bank & Trust Company,[6] after noting that the question of advisability of adopting the so-called Texas rule had never been presented to it and it had no jurisdiction in the matter, nevertheless stated that it could find no fault with the District Court's use of the rule in that eminent domain case. There, the Supreme Court was careful to point out that the two prerequisites existed prior to applying the Texas rule. These prerequisites are: 1. a finding that it would have been futile for the property owner to have exhausted his administrative remedy by applying for rezoning, and 2. a determination that the question of rezoning was not "fairly debatable."
Florida's "fairly debatable" rule, applicable when the matter of rezoning is presented, is that a court will not substitute its judgment for that of the zoning body if the question of change in the zoning ordinance is "fairly debatable." There was no determination in the case sub judice that the question of rezoning was not "fairly debatable." Bear in mind that in making the assessment in the instant case the trial judge is governed by the same constitutional mandate and statutory law that governs the tax assessor, and a tax assessor has no authority to determine whether the question of rezoning is "fairly debatable" nor can he receive evidence so as to determine under the Texas rule that there is reasonable probability that existing restrictions may be lifted within a reasonable time. Such judicial powers have never been granted tax assessors, and if judges in fixing assessments exercised those powers, it is obvious that inequities would result by the use of different standards. Therefore, the Texas rule, applicable in Florida only after a finding that rezoning is not "fairly debatable" and not being subject to the restrictions of Section 193.021, Florida Statutes, has no application in appraising property for tax assessment purposes.
It is the tax assessor's position that the Williams property has already increased in value due to the existent and potential expansion of the adjoining business area, and this increase in value should be reflected in the assessment. This increase, if it actually exists, will be reflected by the current sale price of truly comparable property and can in that manner be brought within the procedural framework of the statute. Therefore, when the seven statutory guideposts are applied to the classic formula, "the amount a purchaser willing but not obliged to buy, would pay to one willing but not obliged to sell", the result will include any actual increase in value due to present demand for comparable property even though this demand is stimulated by a future potential use. Such value relates to the date of appraisal  not five years thence.
The cause is remanded for determination of the assessment in accordance with this opinion.
Reversed.
JOHNSON and SPECTOR, JJ., concur.
NOTES
[1] Walter v. Schuler, 176 So.2d 81 (Fla. 1965).
[2] Id. p. 86.
[3] Lanier v. Overstreet, 175 So.2d 521, 524 (Fla. 1965).
[4] Ibid.
[5] Board of Commissioners of State Institutions v. Tallahassee Bank & Trust Company, 108 So.2d 74 (Fla.App.1st, 1958).
[6] Board of Commissioners of State Institutions v. Tallahassee Bank & Trust Company, 116 So.2d 762 (Fla. 1959).