485 So.2d 442 (1986)
FLORIDA ROCK INDUSTRIES, Inc., Appellant,
v.
Franklin B. BYSTROM, Dade County Property Appraiser and Stephen L. Smith, Dade County Tax Collector, Appellees.
No. 85-1358.
District Court of Appeal of Florida, Third District.
February 25, 1986.
Rehearing Denied April 14, 1986.
*443 John G. Fletcher, South Miami, for appellant.
Robert A. Ginsburg, Co. Atty. and Daniel A. Weiss, Asst. Co. Atty., for appellees.
Before BARKDULL, NESBITT and FERGUSON, JJ.
BARKDULL, Judge.
The appellant instituted a proceeding to contest the property appraiser's 1982 ad valorem real property assessment on its property. At the conclusion of a final hearing in the matter the trial court rendered a final judgment sustaining the assessment in words and figures as follows:
"THIS CAUSE came before the Court for nonjury trial on April 16, 1985. The Court heard testimony, received documentary evidence and considered the parties' pleadings and memoranda of law. Being fully advised in the premises, the Court makes the following:"

FINDINGS OF FACT
"1. This action was brought by the Plaintiff-taxpayer FLORIDA ROCK INDUSTRIES, INC. to contest the 1982 real property tax assessment of some 1,560 acres of undeveloped wetlands with frontage along Krome Avenue, situated in unincorporated Dade County west of the Dade-Broward levee, between the Tamiami Trail and Northwest 106th Street. The property is identified by tax roll folio numbers XX-XXXX-XX-XX, XX-XXXX-XX-XXXX and XX-XXXX-XX-XXXX.
"2. The Defendant Property Appraiser assessed the subject land at $4,089,950 as of January 1, 1982. This was its `just value' or fair market value on the assessment date. The tax assessment was prepared *444 by Robert M. Perez, supervisor of the Real Estate Division of the Property Appraiser's Office.
"3. The Property Appraiser determined the fair market value of the subject property by performing a standard appraisal using the comparable sales approach to valuation. In so doing, the Property Appraiser considered and gave adequate weight to all the factors set forth in Section 193.011, Florida Statutes. Market data used in assessing the property consisted primarily of sales of substantial tracts of vacant land in the vicinity of the subject property and included the transfer of as much as 1,280 acres. The comparable sales occurred between 1979 and 1982. The comparable sale properties considered by the Court are all in close proximity to the subject property and are within the area described in paragraph 1 above. All of the comparable sales are subject to the same federal regulations which restrict the present use of the subject property. The comparable sales used by the Property Appraiser in preparing the subject assessment are highly comparable to the subject property with regard to highest and best use and present use, size and location. Some of the comparable sale properties actually abut the subject property.
"4. The Property Appraiser's determination of the `just (fair market) value' of the subject property was amply supported by the expert testimony of Stephen M. Cantwell, MAI. Mr. Cantwell conducted an independent appraisal, thoroughly examining and investigating the present market demand for and sales of undeveloped land in the immediate area of the subject property. Mr. Cantwell's testimony was extremely believable, and the Court accepts his testimony and opinions verbatim. Based on overwhelming evidence of present market demand, Mr. Cantwell estimated the fair market value of the subject property as of January 1, 1982 at $4,750,000.
"5. The Plaintiff-taxpayer objected to the 1982 assessment of the subject property, contending that the Property Appraiser failed to consider the jurisdiction of the Corps of Engineers over the subject property, or failed to give adequate weight to such governmental regulation. The Court is of the opinion and here finds that the Property Appraiser, through Mr. Perez, was keenly aware of and thoroughly considered the limitations on the present use of the subject property resulting from the jurisdiction of the United States Army Corps of Engineers. By considering sales of neighboring parcels subject to the same jurisdiction as the subject property, appropriate weight was given by the Property Appraiser to the land use restrictions applicable to the subject property, as well as to all other criteria set out in Section 193.011, Florida Statutes.
"6. The Court expressly rejects and finds not credible the testimony of the Plaintiff's expert Mr. Eugene Davidson. Mr. Davidson contended that the sales used by the Property Appraiser could not be considered comparable sales. Mr. Davidson arrived at this conclusion initially not by the time-honored appraisal practice of verification, but by inferring that the buyers of properties comparable to the subject could not have been knowledgeable of governmental regulation in the area. The Court finds that the buyers of the comparable sale properties, who in the aggregate invested millions of dollars in cash in acquiring those properties, were informed regarding governmental regulations restricting the present use of their recently purchased property and acted with knowledge of such restrictions in consummating the transactions in question. The Court's findings in this regard are predicated primarily on testimony by Mr. Cantwell and Mr. Perez concerning verification of sales. The comparable sales used by the Property Appraiser and Mr. Cantwell were thus shown to fit the `willing buyer  willing seller' paradigm.
"7. Whether or not the buyers who have purchased land in the immediate vicinity of the subject property were speculators, the Court finds that the Property Appraiser did not speculate or engage in *445 conjecture by using the comparable sales of similar property in arriving at his estimate of the fair market value of the subject property. The Court finds that as of January 1, 1982 there was a presently existing viable market demand for the subject property as evidenced by comparable sales. It appears evident to the Court that some day, sales prices of property in the area may well exceed current prices by a million dollars per section.
"8. Paul Larsen, the taxpayer's own witness, testified that Dade County has annually issued permits allowing the Plaintiff to rockmine the subject property, and that based on an economic approach to valuation the value of the subject property for rockmining could range up to $40,000 per acre, or $62,400,000 for the entire tract. It is apparent that in assessing the subject property at a mere fraction of that value the Property Appraiser did not assess the subject property on the basis of its value as rockmining land, but considered only the value of the subject property as of the January 1, 1982 assessment date as indicated by comparable sales. Through the use of the comparable sales approach, however, the prospective value of the property was considered by the Property Appraiser only to the extent it entered into, and was reflected by, the present market value of the property on the assessment date, as indicated by sales consummated between 1979 and 1982. The Court finds that the sales considered and used by the Property Appraiser were bona fide arm's-length transactions, and were not `purely speculative, as evidenced by the terms of sale'. The Property Appraiser was therefore not required by the Department of Revenue's Standard Measures of Value to discard such sales as worthless."

CONCLUSIONS OF LAW
"9. The issue presented by the instant case is whether the Property Appraiser may assess property at fair market value based upon comparable sales of raw land in the area of the subject property where development of the property in the immediate future is virtually precluded and the present use of the property is severely restricted by governmental regulations. This very question has recently been answered in the affirmative by the Second District Court of Appeal. In Roden v. GAC Liquidating Trust, 462 So.2d 92 (Fla. 2d DCA 1985), the court considered the assessment of some 10,140 acres of undeveloped, unplatted wetlands. There were no utilities, dedicated roadways or other improvements serving the property. Applicable land use regulations prohibit development of more than ten percent (10%) of such wetlands areas and prohibit the issuance of a building permit for property not on a public road.
"The court concluded that the best indicators of value of the property were the comparable sales in proximity to the subject. The comparable sales were properly considered by the Polk County Property Appraiser in light of Section 193.011, Florida Statutes, and the assessment was upheld. This Court is likewise persuaded that the Dade County Property Appraiser in the instant case proceeded properly in accordance with Section 193.011 and that the assessment of the subject property should be upheld for the reasons set forth in this judgment.
"10. Section 193.011, Florida Statutes, prescribes eight criteria which the Property Appraiser must consider in arriving at fair market value. A Property Appraiser may assign to each statutory criteria such weight as he deems proper. Straughn v. Tuck, 354 So.2d 368 (Fla. 1977). The Court finds and concludes that by considering and giving adequate weight to all eight criteria, the Dade County Property Appraiser complied with the constitutional and statutory mandates of his office in assessing the subject property, including Section 193.011(2), regarding highest and best use and present use. `The guidelines set forth in Section 193.011, Florida Statutes, are of use especially to Property Appraisers where there is a lack of, or where there is inadequate market evidence. (This market evidence could be sales or income data.) *446 Where there are sales, however, of comparable properties, the Appraiser must perform a standard appraisal using normal techniques. By doing this, he necessarily considers all, and uses some, of the factors set forth in Section 193.011, Florida Statutes.' Bystrom v. Valencia Center, Inc., 432 So.2d 108, 110 (Fla. 3d DCA 1983), rev. den., 444 So.2d 418 (1984).
"11. Property Appraisers may properly consider prospective value to the extent it enters into and is thereby reflected in present value. In the instant case, the Property Appraiser properly considered this present value, which was amply evidenced by recent transactions in an active real estate market. These transactions conclusively demonstrated a present market demand for the subject property as of the January 1, 1982 taxing date. See City of Tampa v. Colgan, 121 Fla. 218, 163 So. 577 (1935); Williams v. Simpson, 209 So.2d 262 (Fla. 1st DCA 1968); 72 Am.Jur.2d, State and Local Taxation Section 763.
"12. Article VII, Section 4 of the Florida Constitution prescribes that all property in the state shall be assessed at `just value' for ad valorem tax purposes. `Just value' is synonymous with fair market value. St. Joe Paper Co. v. Brown, 223 So.2d 311 (Fla. 1969); Walter v. Schuler, 176 So.2d 81 (Fla. 1965). Only agricultural land or land used exclusively for non-commercial recreational purposes may be classified by general law and assessed solely on the basis of character or use. Article VII, Section 4(a), Florida Constitution.
"13. The Plaintiff-taxpayer failed to allege or show that the subject property qualifies under Chapter 193, Part II, Florida Statutes, for assessment solely on the basis of character or use. Since the subject property is not specially classified land, the State Constitution requires the property to be assessed at fair market value and precludes it from being assessed solely on the basis of character or use. Neither the Property Appraiser nor this Court is free to deviate from this Constitutional standard or to reject the compelling evidence that the property has present value as demonstrated by the active market of comparable land sales abutting or otherwise in close proximity to the subject property.
"14. It was the taxpayer's burden to prove that the contested tax assessment is unsupported by any reasonable hypothesis of a legal assessment, and not simply to show that the taxpayer's appraisal is preferable to the assessment. Blake v. Xerox Corporation, 447 So.2d 1348 (Fla. 1984). The Plaintiff-taxpayer herein did not prove that the assessment by the Property Appraiser was inconsistent with any reasonable hypothesis of a legal assessment. Moreover, the taxpayer adduced no substantial competent evidence to support a reduction in assessment. Accordingly, it is
"ORDERED AND ADJUDGED that:
"1. The 1982 assessment of the subject property described in paragraphs 1 and 2 above is hereby confirmed and ratified in all respects.
"2. Plaintiff's Complaint and the cause are hereby dismissed with prejudice.
"3. Defendants do hereby have judgment in their favor and against the Plaintiff and the Plaintiff shall go hence without day.
"4. The Court reserves jurisdiction to tax costs against the Plaintiff upon due notice."
The appellant contends that the Property Appraiser's assessment of value was purely speculative as to future value, even though based on comparable sales and therefore was contrary to the provisions of Section 193.011, Fla. Stat. (1981). The Constitution of the State of Florida provides that assessments are to be based on "just value", Article VII, Section 4, Fla. Const. (1968). The Supreme Court of Florida has defined "just value" to be that price which a willing buyer will pay a willing seller, who is not under duress to make a sale. Southern Bell Telephone and Telegraph Co. v. County of Dade, 275 So.2d 4 (Fla. 1973); Walter v. Schuler, 176 So.2d 81 (Fla. 1965). There is ample evidence that in the instant case, willing buyers have purchased *447 from willing sellers (not under duress), comparable land for a price in excess of the assessed value and; that the landowner itself has placed the present value on the land at a price in excess of the assessed value. The record supports the conclusion and judgment of the Property Appraiser that the "just value" of the property as of January 1, 1982 was in an amount of the assessment and therefore his judgment should not be interfered with by the courts. Powell v. Kelly, 223 So.2d 305 (Fla. 1969); Bystrom v. Valencia Center, Inc., 432 So.2d 108 (Fla. 3d DCA 1983). His judgment was not based on speculation of future value, but was a judgment based, among other things, on comparable value as fixed in the market place by comparable sales. If, as the appellant contends, the legislature meant to modify the terms of the constitution by its statutory enactment with reference to speculative value of Section 193.011(2), Fla. Stat. (1981), then such would be an unconstitutional attempt to vary the meaning of the constitution as interpreted by the Supreme Court. Southern Bell Telephone and Telegraph Co. v. County of Dade, supra; Walter v. Schuler, supra.
This court recognizes that, inherently, in the purchase of almost all nonresidential property, the purchaser anticipates or speculates on an increase in value, which is a normal part of investment strategy and, the trial court discerned between speculation by buyers and speculation by the Property Appraiser considering such sales. The Property Appraiser may consider comparable sales consummated in arm's-length transactions by persons speculating on future governmental approvals for use of land. Only sales which are "purely speculative, as evidenced by the terms of sale" are to be excluded from the Property Appraiser's consideration.[1]
All three appraisal witnesses who appeared at trial on behalf of the Appraiser or the taxpayer testified that the comparable sales supporting the assessment were not within the scope of the DOR standard "purely speculative, as evidenced by the terms of sale", so as to require their exclusion.
The appellant contends that if property has no immediate use, it has no assessable value until actual physical use becomes legally permissible, notwithstanding the substantial present market demand which demonstrates that the property has present market value. This theory is inconsistent with the firmly established principle that "just value" for tax assessment purposes is synonymous with "fair market value." E.g., Southern Bell Telephone and Telegraph Co. v. County of Dade, supra; Walter v. Schuler, supra.
The trial court rejected the taxpayer's argument, finding that the Property Appraiser had adequately considered not only the highest and best use and present use of the subject property, but also the other seven mandatory statutory factors. The trial court concluded:
"Through the use of the comparable sales approach, however, the prospective value of the property was considered by the Property Appraiser only to the extent it entered into, and was reflected by, the present market value of the property on the assessment date, as indicated by sales consummated between 1979 and 1982. The Court finds that the sales considered and used by the Property Appraiser were bona fide arm's-length transactions, and were not purely speculative, as evidenced by the terms of sale."
The trial court's conclusion in this regard is correct. The courts have consistently authorized property appraisers to consider sales for speculative investment as comparable sales for appraisal purposes. In Lanier v. Walt Disney World Co., 316 So.2d 59, 63 (Fla. 4th DCA 1975), cert. denied, 330 So.2d 19 (Fla. 1976), the property in *448 question was located near Disney World. It was not being used by the owner but was held for speculation. The Fourth District said that, in arriving at just value, an assessment based on speculative use is a fair one. Accord Vero Beach Shores, Inc. v. Nolte, 467 So.2d 1041 at 1043 (Fla. 4th DCA 1985) (assessment approved where highest and best use of the property was for speculative investment, where comparable sales indicated present demand for the property).
Present market sales of unimproved land which may be based on the buyers' expectations of "future potential use", Williams v. Simpson, 209 So.2d 262 (Fla. 1st DCA 1968), cert. denied, 212 So.2d 629 (Fla. 1968), are evidence of present market value. The future uses to which the property may be put is a matter of conjecture. The presence of an active sales market and of resulting market value are matters of fact, not speculation.
The courts have distinguished between conjecture as to future uses of property and expectation of increase in value as evidenced in present market transactions. The Property Appraiser may not indulge in the former, but necessarily considers the latter every time he uses the comparable sales approach to valuation. This is a recognition of the fact that land value is determined by potential land use. Indeed, land has no value unless there is a present or anticipated use for it, and its value depends on the nature of the anticipated use. The Property Appraiser's witness explained at trial that potential land use influences present market value by stimulating present demand.
Williams v. Simpson, supra, discussed Lanier v. Overstreet, 175 So.2d 521 (Fla. 1965), in detail. In Williams, the assessment of certain lands was admittedly based on an assumption of rezoning in the indefinite future. The tax assessor's appraisal considered the "future potential" of the property. 209 So.2d at 263. The court, in discussing Lanier v. Overstreet, stated:
"This is not to be construed as holding that a present demand for the property in question generated by a future potential would not increase its present fair market value; for it would. However, there was no showing of the existence of any such demand here... ." [Emphasis added.]
209 So.2d 265. This is why the current market must be examined to determine present market value. A present demand for property generated by a future potential does increase its present market value. The existence of a present demand for the subject property generated by a future potential was thoroughly established at trial. It is the present active demand upon which the Property Appraiser predicated the assessment. The Williams court made this point clear. It stated:
"[W]hen the seven statutory guideposts are applied to the classic formula, `the amount a purchaser willing but not obliged to buy, would pay to one willing, but not obliged to sell,' the result will include any actual increase in value due to present demand for comparable property even though this demand is stimulated by a future potential use. Such value relates to the date of appraisal  not five years thence." [Emphasis added.]
209 So.2d at 266. Comparable sales are probative of market value, even where sales prices are stimulated by future potential use. Accord Bystrom v. Valencia Center, supra, (where this Court held that it is the present actual market value, and not the value of the property's current use, which meets the constitutionally mandated assessment at "just value".) Therefore we do not find merit in the appellant's argument and affirm the final judgment approving the assessment here under review.
Affirmed.
NOTES
[1] State of Florida Department of Revenue (DOR) Manual of Instructions, Standard Measures of Value, Real Property guidelines.