516 So.2d 959 (1987)
SECURITY MANAGEMENT CORP., a Maryland Corporation Authorized to Do Business in the State of Florida; and Victor Posner, Gail P. Cohen and Steven Posner, As Trustees under Irrevocable Trust Agreement for Victor Posner (Trust No. 20), Dated September 15, 1967, As Amended, Appellants/Cross Appellees,
v.
William MARKHAM, Property Appraiser of Broward County, Florida, Appellee/Cross Appellant, and
P. Randall Miller, As Executive Director of the Department of Revenue of the State of Florida, and Joseph Rosenhagen, As Broward County Revenue Collector, Appellees.
No. 85-377.
District Court of Appeal of Florida, Fourth District.
June 3, 1987.
*960 Michael Winer of Sibley, Giblin, Levenson & Glaser, Miami Beach, and Ira M. Elegant of Buchbinder & Elegant, P.A., Miami, for appellants/cross appellees.
Gaylord A. Wood, Jr., Fort Lauderdale, and J. Terrell Williams, Dept. of Legal Affairs, Tallahassee, for William Markham and P. Randall Miller.

ON DENIAL OF MOTION FOR REHEARING EN BANC AND MOTION FOR REHEARING
DELL, Judge.
Appellees' motions for rehearing, and rehearing en banc are denied. However, we withdraw the opinion issued February 11, 1987 and we issue the following revised opinion.
Appellants seek reversal of a final judgment upholding certain 1983 county tax assessments on vacant lands located in Broward County and owned by appellants. The land is situated in the City of Hallandale, Florida, (City) and comprises more than nine acres, partly along AIA, bounded on the east by an erosion control line and the Atlantic Ocean. In 1982, the county assessed the land at $6,598,400. In 1983, it increased the assessment to $47,426,000. This is the sixth case to reach this court in the past four years concerning this property and its proposed development.[1]
In 1969, appellants planned a 1,500  unit condominium project ("Five Continents") for the subject property. They submitted plans for the project and requested a building permit from the city building department. The city commission, subject to approval of construction plans and payment of a permit fee, approved a setback, a variance and all of the project's five buildings in one permit as shown on the site plan. Appellants paid a $73,000 permit fee and were given a "tentative building permit." However, the building inspector did not review the plans. In 1970, the city and appellants entered into negotiations and agreed upon a price for the city's purchase of the property for use as a public beach, subject to the passage of a bond issue. In 1971, the voters defeated the bond issue. Shortly thereafter, the city commission voted to return the building permit fee to appellants who allegedly had delayed in acquiring the permit.
Appellants filed suit seeking a mandatory injunction to require the issuance of the building permit for the 1,500  unit project and thereafter resumed negotiations for *961 the city's purchase of the subject property. Appellants failed to reach an agreement with the city. The injunction proceeding finally went to trial, resulting in a final judgment in 1981, directing the city to examine the building plans and to advise the owner of any defects in them. The final judgment provided that appellants would have forty-five days after notice of any such defects to cure them. The city appealed and this court affirmed the final judgment in City of Hallandale v. Acmar, 410 So.2d 629 (Fla. 4th DCA 1982). In April, 1982, the city rejected appellants' plans for construction of the 1,500  unit project and informed appellants:
If you wish to submit further plans for construction on the subject site, you must do so in accordance with the current ordinances of the City [which permits 25 units per acre] and all other government regulations.
The 1971 tentative building permit was based on the zoning in effect at that time, and would have permitted construction of the 1,500  unit project. However, the 1982 zoning laws permitted construction of only 236 units on appellants' land. Appellants filed a motion to enlarge the time to cure the alleged defects in the plans and to submit revised, corrected plans. The trial court denied the motion, stating that it lacked jurisdiction. Appellants filed a petition for writ of mandamus in this court to compel the trial court to assume or exercise jurisdiction and to entertain their motion to enlarge time. We granted the petition in a decision dated December 29, 1982, but withheld issuance of the writ of mandamus. Acmar Engineering Corporation v. Farrington, 423 So.2d 1033 (Fla. 4th DCA 1982). In April, 1983, appellants submitted corrected plans in an attempt to cure the defects previously pointed out by the city in 1982. The city rejected the plans two months later, citing 150 defects, and declaring appellants' building permit application null and void pursuant to the South Florida Building Code. In June, 1983, Broward County filed suit against appellants and alleged that since the land had not been platted, the city could not issue a building permit.
On May 25, 1983, the county tentatively assessed the property at approximately $12,720,000. However, on June 24, 1983, the property appraiser attached stickers to the plaintiffs' property showing the appraisal value to be $47,426,000. In August, 1983, the Acmar trial court entered an interim order directing the city to accept additional plans from appellants. The city appealed this interim order, and another order denying its motion to disqualify the presiding judge. This resulted in a petition for writ of prohibition which was denied. City of Hallandale v. The Hon. Otis Farrington, Case No. 83-2132 (Fla. 4th DCA 1984). On November 19, 1984, the trial court entered a second interim order which, among other things, limited the city to its June, 1983 list of deficiencies. The city again appealed the second interim order and this court affirmed the order on June 5, 1985 in City of Hallandale v. Acmar Engineering Corp., 471 So.2d 55 (Fla. 4th DCA 1985).
The instant appeal arose from this procedural history. On February 7, 1984, appellants filed suit to cancel the tax assessment and sought an injunction and other relief from the assessment. Appellants alleged that the assessment was discrimatory and a denial of equal protection and that the county failed to utilize the factors set forth in section 193.011, Florida Statutes (1983) when it assessed the subject property. The trial court entered a final judgment on January 18, 1985, finding that appellants had failed to prove their allegations of discrimination and denial of equal protection, and also had failed to prove that appellees violated section 193.011 in assessing the subject property. Appellants filed a timely notice of appeal from the final judgment and appellees filed a notice of cross appeal challenging the admission of certain evidence and the trial court's failure to dismiss the complaint.
Appellants raise three points on appeal. First they contend that the trial court erred when it approved an increase in the assessed value of the land from $6,598,400 in 1982 to $47,426,000 in 1983. They claim that the increase of 618 per cent is erroneous *962 because: (a) the assessment was based upon zoning permitting a density of 1,500 units as of January 1, 1983, when the underlying density actually permitted only 236 units; (b) the landowners would not have been allowed to build 1,500 units on January 1, 1983, since they could not submit plans for a building permit as of that date; (c) the State of Florida had not issued a permit approving the construction with respect to the coastal control line; and (d) two independent MAI appraisers employed by the State of Florida had appraised the lands for $11,092,000 and $12,325,000 just two months prior to January 1, 1983. Secondly, they contend that appellees failed to properly consider the criteria contained in section 193.011(2), Florida Statutes (1983) when they assessed the subject property. Finally, they contend that the trial court erred in failing to declare the 1983 ad valorem assessment void in that the amount of the increase (618 per cent) in their assessment establishes discrimination against them in relation to all or substantially all other taxpayers in Broward County, Florida in 1983.
Appellants' first argument is that the Acmar final judgment merely gave them an opportunity to achieve a 1,500 unit density for their land conditioned on the city's issuance of a building permit within a date certain. They point out that the trial court's order in Acmar dated July, 1982, denied their motion to enlarge the time to submit corrected plans, thus eliminating any chance of their obtaining a 1,500 unit density permit as of January 1, 1983. However, appellees argue that this court's decision filed on December 29, 1982, in the mandamus proceeding furnished a sufficient basis for an assessment based on 1,500 units. We disagree with appellee.
This court did not order the trial court to grant the motion to enlarge the time for filing of plans. Rather, we determined only that the trial court had jurisdiction to hear and decide the motion and withheld issuance of the writ of mandamus. After our decision, appellants submitted plans in April, 1983, only to be rejected again. The trial court did not enter its order directing the city to accept submission of the plans until August, 1983. Additionally, appellants argue that on January 1, 1983, they did not have a permit from the state allowing construction along the coastal construction control line, and that in determining assessed value, the county appraiser simply assumed that a waiver permitting the construction could be obtained.
Section 193.011, Florida Statutes (1983) provides in pertinent part:
In arriving at just valuation as required under s. 4, Art. VII of the State Constitution, the property appraiser shall take into consideration the following factors:
(1) The present cash value of the property, which is the amount a willing purchaser would pay a willing seller, exclusive of reasonable fees and costs of purchase, in cash or the immediate equivalent thereof in a transaction at arm's length;
(2) The highest and best use to which the property can be expected to be put in the immediate future and the present use of the property, taking into consideration any applicable local or state land use regulation and considering any moratorium imposed by executive order, law, ordinance, regulation, resolution, or proclamation adopted by any governmental body or agency or the Governor when the moratorium prohibits or restricts the development or improvement of property as otherwise authorized by applicable law;
(3) The location of said property; ... .
(Emphasis added.)
Section 192.042, Florida Statutes (1983) provides:
Date of assessment.  All property shall be assessed according to its just value as follows:
(1) Real property, on January 1 of each year. Improvements or portions not substantially completed on January 1 shall have no value placed thereon. "Substantially completed" shall mean that the improvement or some self-sufficient unit within it can be used for the purpose for which it was constructed.
*963 Section 193.011 thus requires consideration of the present use of the property and its highest and best use in the immediate future. "Immediate future" use means use which is "expected immediately." Lanier v. Overstreet, 175 So.2d 521 (Fla. 1965). Although an appraiser may consider information which comes to light after January 1 of the taxable year, insofar as it is relevant to the valuation as of January 1, the focus for the actual assessment remains with the January 1 date, and, the present use and highest and best use in the immediate future. Bystrom v. Equitable Life Assurance Society of the United States, 416 So.2d 1133 (Fla. 3d DCA 1982). The statute does not allow an appraiser to look to months or years in the future when, possibly, a set of plans may be approved and a building permit issued. In Straughn v. Tuck, 354 So.2d 368 (Fla. 1977), rehearing denied (1978), the supreme court pointed out:
More specifically, the tax assessor in this case failed to consider the "present use" of appellees' property, in determining the "highest and best use" to which the property could be expected to be put in the "immediate future." Section 193.011(2). Rather, he valued it by subjective standards, using speculative factors, assuming there would be a zoning change and the land converted to a more intensive use... . The uses under the statute must be immediate, not speculative, and not predicated on conversion to higher or better uses. Lanier v. Overstreet, 175 So.2d 521 (Fla. 1965). Present use and immediate future use are strongly influenced by zoning and zoning must, therefore, be considered by the assessor in his determination of just valuation.
Id. at 371-72.
Thus it is clear that speculation as to future zoning changes, or ignorance or disregard of present zoning restrictions, is improper in assessment decisions. Lanier v. Walt Disney World, 316 So.2d 59 (Fla. 4th DCA 1975), cert. denied, 330 So.2d 19 (Fla. 1976).
In the present case, on January 1, 1983, appellants did not have a building permit, plan approval or the state permits necessary for the construction of the proposed complex. The record also establishes that on January 1, 1983, the applicable zoning permitted only 25 units per acre or a total of 236 units, rather than the 1,500 units used by the appraiser in computing the assessment. The trial court apparently rejected the two appraisal reports prepared for the State of Florida, and based its judgment approving the assessment upon the testimony of the county property appraiser, John Albert, an independent engineer, Alfonso Felicella, and real estate appraiser, John Figini. Engineer Felicella mistakenly testified that plans were on file and available for approval by the city on January 1, 1983. He later admitted that he had not read a letter dated June 22, 1982, rejecting those plans, and further admitted that no new plans were submitted until December, 1984. Appraiser Figini relied on the engineer Felicella's speculation that 1,500 units could be built, and that on January 1, 1983, appellants had a building permit application pending. Appellants moved to strike Figini's testimony because it was based on a false premise, but their motion was denied. The testimony should have been excluded because it was based on speculation and as such was inadmissible. Williams v. Simpson, 209 So.2d 262 (Fla. 1st DCA), cert. denied, 212 So.2d 629 (Fla. 1968). As stated before, our review of the record satisfies us that on January 1, 1983, appellants did not have building permits, plan approval, or the necessary state permits to construct a 1,500 unit development on the subject property. In fact, on January 1, 1983, the time for submission of new or corrected plans had expired. The trial court did not direct the city to accept the submission of corrected plans, thus enlarging the original time allowed, until August, 1983. Therefore, we find no record support for the property appraiser's assessment based upon 1,500 units, and hold that the appraisal should have been based upon the then existing zoning of 25 units per acre.
Finally, we agree with the trial judge's conclusion that appellants failed to present substantial, competent evidence of discrimination *964 and denial of their equal protection rights. We find no merit in the arguments raised on cross appeal by appellees. Accordingly, we reverse the final judgment approving the 1983 assessments on the subject property and remand this cause to the trial court for further proceedings consistent herewith.
AFFIRMED IN PART; REVERSED IN PART and REMANDED.
DOWNEY, J., and RIVKIND, LEONARD, Associate Judge, concur.
NOTES
[1] The five prior cases were:

(1) City of Hallandale v. Acmar Engineering Corp., 410 So.2d 629 (Fla. 4th DCA 1982).
(2) Acmar Engineering Corp. v. Farrington, 423 So.2d 1033 (Fla. 4th DCA 1982).
(3) City of Hallandale v. Farrington, No. 83-2132 (Fla. 4th DCA 1984) (summarily denied by order of court).
(4) City of Hallandale v. Acmar Engineering Corp., 447 So.2d 454 (Fla. 4th DCA 1984).
(5) City of Hallandale v. Acmar Engineering Corp., 471 So.2d 55 (Fla. 4th DCA 1985).