871 So.2d 961 (2004)
Morgan GILREATH, Jr., etc., Appellant,
v.
WESTGATE DAYTONA, LTD., etc., Appellee.
No. 5D02-3699.
District Court of Appeal of Florida, Fifth District.
April 2, 2004.
Rehearing Denied May 4, 2004.
*962 Gaylord A. Wood, Jr. and B. Jordan Stuart of Wood & Stuart, P.A., New Smyrna Beach and Mark T. Aliff, Assistant Attorney General, Department of Legal Affairs, Tallahassee, for Appellant.
Michael Marder and Victor Kline of Greenspoon, Marder, Hirschfeld, Rafkin, Ross & Berger, P.A., Orlando, for Appellee.
SAWAYA, C.J.
Morgan Gilreath, Jr., as Volusia County Property Appraiser, appeals the judgment rendered by the trial court that quashed Gilreath's 1998 and 1999 ad valorem tax assessments of certain condominium units owned by Westgate Daytona, Ltd. The judgment declared that these condominium units, which were situated in the Harbour Beach Resort, were improperly assessed by Gilreath as timeshare property.
The issue we must resolve is whether the county, pursuant to its taxing authority bestowed upon it by the State of Florida, may assess a condominium for purposes of ad valorem taxes as a timeshare prior to it becoming a timeshare under Florida law. We conclude that it should not be allowed to do so until the condominium ceases to be a condominium and becomes a timeshare in accordance with Florida law. Accordingly, we affirm the judgment as to the 1998 assessment, but reverse as to the 1999 assessment.
The Florida Legislature has enacted a rather complex statutory scheme that *963 must be complied with in order to convert a condominium into a timeshare. Unless and until these requirements are met, a condominium cannot become a timeshare. The Legislature has also enacted a specific statute that governs how timeshare estates must be assessed for purposes of ad valorem taxation, which clearly requires that the real property be a timeshare under Florida law in order to be assessed and taxed as such. After first discussing the factual background of the instant case, we will discuss the statutory scheme governing the creation of timeshare property in Florida and the specific statutory requirement governing assessment of timeshare property. Thereafter, we will discuss the argument presented by Gilreath that he properly assessed the condominiums according to their highest and best use which, according to Gilreath, was as timeshares.

Factual Background
Harbour Beach Resort began as a condominium complex containing 228 units. The Declaration of Condominium dated January 31, 1995, which governs Harbour Beach Resort, allowed for future creation of timeshare estates. Westgate purchased 24 condominium units in 1995 and began to market 16 units as timeshares in 1997. In the initial Public Offering Statement [POS] filed by Westgate pursuant to section 721.07, Florida Statutes, these 16 condominium units were specified for future sale as timeshare property. Although the POS was filed in February 1997, it was not approved until November 4, 1998. Westgate presented evidence that the delay in obtaining approval of the POS was largely the result of underfunding of the reserve account with the Harbour Beach Condominium Association. One of the approval requirements was that the Association adopt a new budget. Westgate did not control the Association's budget. The Division of Florida Land Sales, Condominiums and Mobile Homes of the Department of Business and Professional Regulation [hereinafter the Division] notified Westgate of many other deficiencies that had to be corrected in order to obtain approval of the POS, which delayed approval of the POS until November 1998. There is no evidence in this record, and Gilreath does not contend, that Westgate did anything other than work diligently to correct the deficiencies as they were presented by the Division.
Westgate began to market timeshare estates in Harbour Beach Resorts in 1997. Every contract entered into between Westgate and a prospective purchaser provided that the purchaser had the right to cancel the contract within ten days of the delivery to the purchaser of a POS that had been finally approved by the Division. Any deed, promissory note or mortgage executed by the purchaser in accordance with the contract was held in escrow and was not delivered until closing occurred after approval of the POS. Moreover, any deposit money paid pursuant to the contract was held in escrow. On the tax returns filed by Westgate, these escrow deposits were listed as a liability because if the POS was not approved, thereby preventing Westgate from conveying title to the timeshare estate, Westgate would have to refund the money. Westgate presented evidence that it financed the sales of the units and paid all of the costs without being able to access the escrowed deposits, thereby causing Westgate to operate on a negative cash flow basis until the actual closings took place after approval of the POS.
Gilreath began investigating the units in 1997. In 1998, when Gilreath sent Westgate the preliminary tax bills, the units were assessed as condominiums at an average assessment of $55,052 per unit. *964 However, approximately two weeks later, Gilreath sent out the final tax bills assessing each unit as a timeshare at an average assessment of $129,166 per unit. In 1999, Gilreath assessed twenty units as timeshares and four as condominiums.
Westgate filed separate suits, subsequently consolidated, regarding the assessments for 1998 and 1999. After a non-jury trial, the trial court entered the judgment under review, quashing the assessments for both years and ordering that Gilreath reassess all of the units as condominiums. The trial court held that until the POS was approved, the sales of the timeshares had closed, the deeds were delivered and recorded, and the escrowed funds were released to Westgate, the units remained condominiums and could not be taxed as timeshares. We conclude that the assessment of the units as timeshares was proper after approval of the POS. In order to explain why we have arrived at this conclusion, we will analyze the pertinent statutory requirements that must be met in order to create a timeshare estate.

Statutory Requirements To Create A Timeshare Estate
In 1981, the Florida Legislature enacted the Florida Vacation Plan and Timesharing Act found in Chapter 721, Florida Statutes,[1] when it determined that, with respect to this relatively new form of real property interest, "a uniform and consistent method of regulation is necessary in order to safeguard Florida's tourism industry and the state's economic well-being." § 721.02(5), Fla. Stat. (2002). In section 721.02, Florida Statutes, the declared purposes of the Act are to:
(1) Give statutory recognition to real property timesharing and personal property timesharing in the state.
(2) Establish procedures for the creation, sale, exchange, promotion, and operation of timeshare plans.
(3) Provide full and fair disclosure to the purchasers and prospective purchasers of timeshare plans.
(4) Require every timeshare plan offered for sale or created and existing in this state to be subjected to the provisions of this chapter.
§ 721.02(1)-(4), Fla. Stat. (2002) (emphasis added).
In order to create a timeshare estate in Florida by converting a condominium into a timeshare, the Declaration of Condominium must specifically provide that timeshare estates will or may be created in the future. § 718.1045, Fla. Stat. (2002) ("No timeshare estates shall be created with respect to any condominium unit except pursuant to provisions in the declaration expressly permitting the creation of such estates."). Section 718.104(4)(o), Florida Statutes, specifically provides that the declaration must contain the following:
If timeshare estates will or may be created with respect to any unit in the condominium, a statement in conspicuous type declaring that timeshare estates will or may be created with respect to units in the condominium. In addition, the degree, quantity, nature, and extent of the timeshare estates that will or may be created shall be defined and described in detail in the declaration, with a specific statement as to the minimum duration of the recurring periods of rights of use, possession, or occupancy that may be created with respect to any unit.
§ 718.104(4)(o), Fla. Stat. (2002) (emphasis added).
If the Declaration of Condominium properly states that timeshare estates may be *965 created, the developer[2] must submit a registered public offering statement to the Division of Florida Land Sales, Condominiums, and Mobile Homes of the Department of Business and Professional Regulation prior to offering any timeshare plan for sale. § 721.07, Fla. Stat. (2002). A POS is defined as "the written materials describing a single-site timeshare plan or a multisite timeshare plan, including a text and any exhibits attached thereto as required by ss. 721.07, 721.55, and 721.551." § 721.05(26), Fla. Stat. (2002). The Division must approve the POS, and until it does, "any contract regarding the sale of that timeshare plan is voidable by the purchaser." § 721.07, Fla. Stat. (2002). The "timesharing plan" is the document that allows timesharing of real property and is defined in section 721.05(37), Florida Statutes, as
any arrangement, plan, scheme, or similar device, other than an exchange program, whether by membership, agreement, tenancy in common, sale, lease, deed, rental agreement, license, or right-to-use agreement or by any other means, whereby a purchaser, for consideration, receives ownership rights in or a right to use accommodations, and facilities, if any, for a period of time less than a full year during any given year, but not necessarily for consecutive years.
§ 721.05(37), Fla. Stat. (2002).[3]
These statutory provisions clearly establish that no timeshare estate may be created unless these statutory provisions are complied with and the Division approves the POS. Until approval is given, a timeshare cannot exist and a condominium remains a condominium and should be taxed as such. The Florida Supreme Court held long ago that an assessment on property not existing when assessed is illegal. Seaboard Air Line Ry. Co. v. Allen, 82 Fla. 191, 89 So. 555 (1921); see also Muckenfuss v. Miller, 421 So.2d 170, 173-74 (Fla. 5th DCA 1982) ("An appraisal which ignores the actual present condition and use of the land cannot pass just valuation muster; and to the extent it seeks to include a value for other reasons, here promised future development, it cannot stand as `just valuation.'") (footnotes omitted), pet. for review denied, 430 So.2d 450 (Fla.), and pet. for review denied, 430 So.2d 451 (Fla.1983). Therefore, because the POS was not approved until November 1998, and in light of the requirement that the assessment must be made as of January 1 pursuant to section 192.042(1), Florida Statutes,[4] the units were improperly *966 assessed as timeshares for the year 1998, but not for the year 1999.
The Legislature has enacted section 192.037, Florida Statutes, which governs how timeshare property is assessed for purposes of ad valorem taxation. The provisions of that statute, which we will discuss next, support this conclusion.

Requirement That Timeshare Estates Be Assessed Pursuant To Section 192.037, Florida Statutes
Counties do not possess inherent power to tax; the legal authority of a county to tax must derive from the state. Whitney v. Hillsborough County, 99 Fla. 628, 127 So. 486 (1930). Hence, "property taxes are `of a purely statutory nature which can be levied, assessed and collected only as provided by statute.'" Hausman v. VTSI, Inc., 482 So.2d 428, 430 (Fla. 5th DCA 1985) (quoting State ex. rel. Seaboard Air Line Ry. Co. v. Gay, 160 Fla. 445, 35 So.2d 403 (1948)), review denied, 492 So.2d 1332 (Fla.1986). This court in Hausman further held that "[a]n assessment not authorized by statute is void." 482 So.2d at 430 (citing Lewis State Bank v. Bridges, 115 Fla. 784, 156 So. 144 (1934)). A court's duty is to "construe tax statutes in favor of taxpayers where an ambiguity may exist." Harbor Ventures, Inc. v. Hutches, 366 So.2d 1173, 1174 (Fla.1979) (citations omitted).
The Legislature has specifically provided for assessment of timeshare estates in section 718.120, Florida Statutes, which is entitled "Separate taxation of condominium parcels; survival of declaration after tax sale; assessment of timeshare estates." Specifically, the Legislature has declared in section 718.120(3), Florida Statutes, that "[c]ondominium property divided into fee timeshare real property shall be assessed for purposes of ad valorem taxes and special assessments as provided in s. 192.037." Section 192.037, Florida Statutes, states in pertinent part:
(10) In making his or her assessment of timeshare real property, the property appraiser shall look first to the resale market.
(11) If there is an inadequate number of resales to provide a basis for arriving at value conclusions, then the property appraiser shall deduct from the original purchase price "usual and reasonable fees and costs of the sale." For purposes of this subsection, "usual and reasonable fees and costs of the sale" for timeshare real property shall include all marketing costs, atypical financing costs, and those costs attributable to the right of a timeshare unit owner or user to participate in an exchange network of resorts. For timeshare real property, such "usual and reasonable fees and costs of the sale" shall be presumed to be 50 percent of the original purchase price; provided, however, such presumption shall be rebuttable.
§ 192.037(10)-(11), Fla. Stat. (2002).
We conclude that the Legislature has clearly expressed its intent that timeshare property be assessed in accordance with section 193.011. We also conclude, based on our analysis of these provisions, that when the Legislature directed that "the resale market" be the basis for a proper assessment, it intended that the resale of timeshare properties in the same building be considered as part of the resale market. Obviously, this requires that the timeshare property be legally established as timeshare property in order to effect a valid resale and hence a resale market. Moreover, the alternative of deducting the appropriate fees and costs from the sales price effectively requires a valid sale of the *967 timeshare property. As we have discussed, any contract entered into between a developer and a prospective purchaser is voidable at the option of the purchaser until the POS is approved. Until that time, any title documents and deposit money must be held in escrow on behalf of the purchaser. Once the POS is approved and the contract is no longer voidable at the will of the purchaser, the contract becomes binding and a sale may be closed by releasing the title documents and deposit money. This establishes a valid basis for assessing timeshare property under section 193.011. Because the POS was approved in November 1998, the property could be validly assessed as of January 1, 1999, for the year 1999, but not for 1998.[5] Therefore, the assessment for 1998 as timeshares is invalid, but the assessment for 1999 is valid.
Gilreath contends that he may nevertheless tax the condominium units as timeshares because that is the highest and best use of the property. We disagree and will next explain why.

The Highest And Best Use Factor
An ad valorem tax is a tax assessed upon the value of property. Mazourek v. Wal-Mart Stores, Inc., 831 So.2d 85 (Fla.2002). The Florida Constitution requires that "[b]y general law regulations shall be prescribed which shall secure a just valuation of all property for ad valorem taxation...." Art. VII, § 4, Fla. Const. The term "just valuation" means "fair market value." Mazourek, 831 So.2d at 88. All real property shall be assessed according to its just value on January 1 of each year. § 192.042, Fla. Stat. (2002). The Legislature enacted section 193.011, Florida Statutes, which lists eight factors that a property appraiser must consider in determining just valuation.
Gilreath argues that the condominiums were properly assessed as timeshare property pursuant to section 193.011(2), Florida Statutes, which provides in pertinent part that in arriving at just valuation, the property appraiser shall consider:
The highest and best use to which the property can be expected to be put in the immediate future and the present use of the property, taking into consideration any applicable judicial limitation, local or state land use regulation, or historic preservation ordinance, and considering any moratorium imposed by executive order, law, ordinance, regulation, resolution, or proclamation adopted by any governmental body or agency or the Governor when the moratorium or judicial limitation prohibits or restricts the development or improvement of property as otherwise authorized by applicable law.
§ 193.011(2), Fla. Stat. (2002). We conclude that when Gilreath assessed the condominium units as timeshares because he determined that was the highest and best use under section 193.011(2), he misapplied this statute.
In Straughn v. Tuck, 354 So.2d 368 (Fla. 1977), the court held that when determining the highest and best use of property under section 193.011(2), "[t]he uses under the statute must be immediate, not speculative, and not predicated on conversion to higher or better uses." Id. at 371-72 (citing Lanier v. Overstreet, 175 So.2d 521 (Fla.1965)); see also Security Mgmt. Corp. v. Markham, 516 So.2d 959 (Fla. 4th *968 DCA), review denied, 518 So.2d 1276 (Fla. 1987). In Lanier, the court explained the rationale for the rule requiring that the use be immediate:
By authorizing tax assessors to consider, as one of the factors "[i]n arriving at a just valuation" of property, the use to which the property "can be expected to be put in the immediate future" (emphasis added), the Legislature has, under the familiar rule of expressio unius est exclusio alterius, prohibited tax assessors from considering potential uses to which the property is reasonably susceptible and to which it might possibly be put in some future tax year or, even, during the current tax year. To be considered, the use must be expected, not merely potential or a "reasonably susceptible" type of use; it must be expected immediately, not at some vague uncertain time in the future. The reason for the legislative policy in this respect was well stated by Judge White in his scholarly dissenting opinion in Lanier v. Tyson, supra, 147 So.2d 365, as follows:
"Assessed valuations of land based on estimates of its highest and best potential, as distinguished from present bona fide use, are bound to be largely conjectural; and when an assessor, contrary to legislative intent and direction, determines that land despite its present value has a truly higher present value because of its potential for some other `higher' purpose, he indulges in unwarranted speculation and does violence to the constitutional and statutory objective of just valuation. The assessor, like the courts, should operate within the record and not de hors it."
Lanier, 175 So.2d at 524. Here, the use of the condominiums as timeshares under section 193.011(2) is totally dependent on conversion of the units to timeshares.[6] Moreover, the use of timeshares is not immediate and is speculative because it depends on obtaining approval of the POS from the Division. In the instant case, a few weeks after the initial filing, Westgate received its first letter from the Division detailing at least 26 discrepancies that included budget deficiencies, underfunded reserve accounts and construction problems. As soon as the initial deficiencies were corrected, the Division provided yet another list with more deficiencies not previously mentioned. The evidence reveals that Westgate acted expeditiously to correct each new set of deficiencies as the Division pointed it out. To contend, as Gilreath does, that the conversion and use of the condominiums to timeshares was "expected immediately, not at some vague uncertain time in the future" is a gross overstatement of the evidence in the instant case. Since approval of the POS was *969 not immediate and was speculative, assessing the condominiums as timeshares as their highest and best use prior to approval of the POS was improper.
Gilreath contends that even if there were legal impediments to the use of the property as timeshares, any use expected in the immediate future that is reflected in the current market must be considered to be the present highest and best use and that timeshare was the actual market of the property based on Westgate's sales to the prospective buyers. Gilreath cites the following cases to support this argument: Hillsborough County v. Knight & Wall Co., 153 Fla. 346, 14 So.2d 703 (1943); Florida Rock Industries, Inc. v. Bystrom, 485 So.2d 442 (Fla. 3d DCA), review denied, 492 So.2d 1332 (Fla.1986); Palm Beach Development & Sales Corp. v. Walker, 478 So.2d 1122 (Fla. 4th DCA 1985), review denied, 488 So.2d 831 (Fla. 1986); Roden v. GAC Liquidating Trust, 462 So.2d 92 (Fla. 2d DCA), review denied, 471 So.2d 43 (Fla.1985); Miami Atlantic Development Corp. v. Blake, 334 So.2d 29 (Fla. 3d DCA 1975), cert. denied, 336 So.2d 602 (Fla.1976); and Dade County v. Miami Herald Publishing Co., 285 So.2d 671 (Fla. 3d DCA 1973), cert. denied, 293 So.2d 713 (Fla.1974). These decisions recognize that buyers are willing to purchase property despite legal impediments to development upon the chance that, in the future, those legal impediments will be lifted. In Bystrom, the court explained:
The courts have consistently authorized property appraisers to consider sales for speculative investment as comparable sales for appraisal purposes....
Present market sales of unimproved land which may be based on the buyer' expectations of "future potential use", Williams v. Simpson, 209 So.2d 262 (Fla. 1st DCA 1968), cert. denied, 212 So.2d 629 (Fla.1968), are evidence of present market value. The future uses to which the property may be put is a matter of conjecture. The presence of an active sales market and of resulting market value are matters of fact, not speculation.
The courts have distinguished between conjecture as to future uses of property and expectation of increase in value as evidenced in present market transactions. The Property Appraiser may not indulge in the former, but necessarily considers the latter every time he uses the comparable sales approach to valuation.
Bystrom, 485 So.2d at 447-48. These cases are inapplicable to the instant case. In each case, the buyer purchased property subject to certain legal impediments in arms length transactions that actually closed and resulted in transfer of title to the property subject to those legal impediments. In the instant case, the contracts were entered into subject to conversion of the condominium property to timeshare estates and were voidable at any time and for any reason by the purchaser. Closing could only take place if the POS was approved by the Division. Until that time, the contract and any monies paid were held in escrow on behalf of the purchaser. In the event the POS was not approved, the closing could not take place and title could never be transferred because timeshare estates were never created. Moreover, in the instant case, Gilreath used comparable sales in other timeshare estates in other developments that had already been converted. These are not comparable sales to the contracts entered into in the instant case because all documents and deposit monies were held in escrow until such time as timeshare estates were actually created.

Conclusion
The Legislature certainly did not intend to enact statutory requirements that must *970 be complied with in order to create and assess timeshare property only to allow the property assessor for a particular county, under its statutory taxing authority, to actually assess and tax a condominium as a timeshare before the statutory requirements have been met. In other words, we do not believe that the Legislature intended to place such strict statutory requirements on a property owner that prohibit the use and sale of his or her condominium as a timeshare only to allow it to be taxed as a timeshare before it actually becomes a timeshare under Florida law. We also do not believe that the Legislature enacted these statutory requirements only to allow the county property appraiser to assess condominium property as timeshare based on what the property appraiser considers to be the highest and best use of the property. Moreover, based on the facts of this case, we conclude that the use of the condominiums as timeshares was not immediate; rather it was speculative and predicated on conversion to higher or better uses. Therefore, Gilreath misapplied this factor when he assessed the condominium units as timeshares.
Accordingly, we affirm the trial court's order quashing the assessment for the year 1998 because the POS had not been approved by the Division prior to January 1, 1998. However, we reverse the order quashing the assessment for the year 1999 because the POS had been approved prior to January 1, 1999.
AFFIRMED in part; REVERSED in part.
GRIFFIN and PALMER, JJ., concur.
NOTES
[1] See § 721.01, Fla. Stat. (2002).
[2] The statutory definition of "developer" includes "[a] `creating developer,' which means any person who creates the timeshare plan." § 721.05(9)(a), Fla. Stat. (2002). Westgate comes within the definition of developer because it created the timeshare plan that was submitted to the Division for approval through inclusion in the POS.
[3] The timesharing plan is usually incorporated in the Declaration of Condominium, see section 718.104(4)(o), Florida Statutes (2002), or is added to the existing declaration by an amendment approved by the record owners of each condominium unit and upon the joinder of the record owners of liens on each unit. See §§ 718.1045, .110(8), Fla. Stat. (2002). "An amendment of a declaration is effective when properly recorded in the public records of the county where the declaration is recorded." § 718.110(3), Fla. Stat. (2002).
[4] Although information that comes to light after January 1 may be considered, it may only be considered for assessment as of January 1. See Security Mgmt. Corp. v. Markham, 516 So.2d 959 (Fla. 4th DCA), review denied, 518 So.2d 1276 (Fla.1987). We note the decision in Sunset Harbour North Condominium Ass'n v. Robbins, 837 So.2d 1181 (Fla. 3d DCA 2003), which held section 192.042 unconstitutional, citing Fuchs v. Robbins, 738 So.2d 338, 341-48 (Fla. 3d DCA 1999), rev'd, Fuchs v. Robbins, 818 So.2d 460 (Fla.2002). We need not decide the constitutionality of this statute because that is not an issue that has been raised in the instant case.
[5] "Although an appraiser may consider information which comes to light after January 1 of the taxable year, insofar as it is relevant to the valuation as of January 1, the focus for the actual assessment remains with the January 1 date, ...." Security Mgmt. Corp., 516 So.2d at 963.
[6] We do not find Gilreath's argument that Westgate rented some of the units on a weekly basis to be very persuasive. Marci Rochkind, the tax accountant and tax manager for Westgate, testified that a use fee would be charged for someone staying in one of the condo units before they actually owned it. She made no reference in the record as to the amount of this fee, just that any use fee charged would be allocated to rental income. In addition, Ms. Rochkind emphasized that since Westgate is in the business of providing vacations, Westgate goes out of its way to permit use of the condos as vacation rentals (pending deed as timeshares), when available. The only evidence of a prospective owner who may have taken advantage of the use-before-sale opportunity is a letter from a John Milanich, one of the prospective timeshare owners, who attests to the fact that he did actually stay in a Westgate villa at Harbour Beach Resort in 1997. Mr. Milanich already owned a different timeshare, which he used in October 1997. He then decided to stay a bit longer in Daytona to enjoy what appears to be a promotional rental in conjunction with a new purchase at Harbour Beach.